## STAUB *v.* CITY OF BAXLEY.

No. 48.   Argued November 18–19, 1957.—Decided January 13, 1958.

*Morris P. Glushien* argued the cause for appellant. With him on the brief were *Ed Pearce* and *Bernard Dunau.*

*J. H. Highsmith* argued the cause and filed a brief for appellee.

Briefs of *amici curiae* urging reversal were filed by *Murray A. Gordon* for the American Civil Liberties Union, and *Carl Rachlin* for the Workers Defense League.

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Appellant, Rose Staub, was convicted in the Mayor's Court of the City of Baxley, Georgia, of violation of a city ordinance and was sentenced to imprisonment for 30 days or to pay a fine of $300. The Superior Court of the county affirmed the judgment of conviction; the Court of Appeals of the State affirmed the judgment of the Superior Court, 94 Ga. App. 18, 93 S. E. 2d 375; and the Supreme Court of the State denied an application for certiorari. The case comes here on appeal.

The ordinance in question is set forth in the margin.[1] Its violation, which is not denied, arose from the follow-

---

[1] "Section I. Before any person or persons, firms or organizations shall solicit membership for any organization, union or society of any sort which requires from its members the payments of membership fees, dues or is entitled to make assessment against its members, such person or persons shall make application in writing to Mayor and Council of the City of Baxley for the issuance of a permit to solicit members in such organization from among the citizens of Baxley.

"Section II. Such application shall give the name and nature of the organization for which applicant desires to solicit members, whether such organization is incorporated or unincorporated, the location of its principal office and place of business and the names of its officers, along with date of its organization, and its assets and liabilities. Such application shall further contain the age and residence of applicant including places of residence of applicant for past ten

ing undisputed facts shown at the trial: Appellant was a salaried employee of the International Ladies' Garment Workers Union which was attempting to organize the employees of a manufacturing company located in the nearby town of Hazelhurst. A number of those employees lived in Baxley. On February 19, 1954, appellant and one Mamie Merritt, also a salaried employee of the union, went to Baxley and, without applying for permits required under the ordinance, talked with several of the employees at their homes about joining the union. While in a restaurant in Baxley on that day they were sought out and questioned by the Chief of Police concerning their activities in Baxley, and appellant told him that they were "going around talking to some of the women to organize the factory workers . . . and hold[ing] meetings with them for that purpose." Later

---

years; and as well as business or profession in which such applicant has been engaged during said time, and shall furnish at least three persons as references to applicant's character. Said application shall also furnish the information as to whether applicant is a salaried employee of the organization for which he is soliciting members, and what compensation, if any, he receives for obtaining members.

"Section III. This application shall be submitted to a regular meeting of Mayor and Council of City of Baxley, and in event it is desired by Mayor and Council to investigate further the information given in the application, or in the event the applicant desires a formal hearing on such application, such hearing shall be set for a time not later than the next regular meeting of the Mayor and Council of City of Baxley. At such hearing the applicant may submit for consideration any evidence that he may desire bearing on the application, and any interested persons shall have the right of appearing and giving evidence to the contrary.

"Section IV. In passing upon such application the Mayor and Council shall consider the character of the applicant, the nature of the business of the organization for which members are desired to be solicited, and its effects upon the general welfare of citizens of the City of Baxley.

"Section V. The granting or refusing to grant of such application for a permit shall be determined by vote of Mayor and Council, after

that day a meeting was held at the home of one of the employees, attended by three other employees, at which, in the words of the hostess, appellant "just told us they wanted us to join the union, and said it would be a good thing for us to do . . . and went on to tell us how this union would help us." Appellant told those present that the membership dues would be 64 cents per week but would not be payable until the employees were organized. No money was asked or received from the persons at the meeting, but they were invited "to get other girls . . . there to join the union" and blank membership cards were offered for that use. Appellant further explained that the immediate objective was to "have enough cards signed to petition for an election . . . with the Labor Board." [2]

On the same day a summons was issued and served by the Chief of Police commanding appellant to appear

consideration and hearing if same is requested by applicant or Mayor and Council, in the same manner as other matters are so granted or denied by the vote of the Mayor and Council.

"Section VI. In the event that person making application is salaried employee or officer of the organization for which he desires to seek members among the citizens of Baxley, or persons employed in the City of Baxley, or received a fee of any sort from the obtaining of such members, he shall be issued a permit and license for soliciting such members upon the payment of $2,000.00 per year. Also $500.00 for each member obtained.

"Section VII. Any person, persons, firm, or corporation soliciting members for any organization from among the citizens or persons employed in the City of Baxley without first obtaining a permit and license therefor shall be punished as provided by Section 85 of Criminal Code of City of Baxley.

"Section VIII. All Ordinances of City of Baxley in conflict with [this] ordinance are hereby repealed.

"Section IX. Should any section or portion of this Ordinance be held void, it shall not affect the remaining sections and portions of same."

[2] This reference obviously was to the National Labor Relations Board as Georgia has no comparable agency.

before the Mayor's Court three days later to answer "to the offense of Soliciting Members for an Organization without a Permit & License."

Before the trial, appellant moved to abate the action upon a number of grounds, among which were the contentions that the ordinance "shows on its face that it is repugnant to and violative of the 1st and 14th Amendments to the Constitution of the United States in that it places a condition precedent upon, and otherwise unlawfully restricts, the defendant's freedom of speech as well as freedom of the press and freedom of lawful assembly" by requiring, as conditions precedent to the exercise of those rights, the issuance of a "license" which the Mayor and city council are authorized by the ordinance to grant or refuse in their discretion, and the payment of a "license fee" which is discriminatory and unreasonable in amount and constitutes a prohibitory flat tax upon the privilege of soliciting persons to join a labor union. These contentions were overruled by the Mayor's Court and, after a continuance,[3] the case was tried and appellant was convicted and sentenced as stated.[4] The same contentions were made in the Superior Court where the city answered, denying "that the ordinance is invalid or void for any of the reasons stated" by appellant, and, after a hearing, that court affirmed the judgment of conviction.

---

[3] During that continuance, appellant brought an action in the Superior Court of the county asking an injunction against enforcement of the ordinance and a declaration of its invalidity. The Superior Court found against petitioner and on appeal the Supreme Court of the State affirmed, holding that "If the ordinance is invalid, by reason of its unconstitutionality, or for other cause, such invalidity would be a complete defense to any prosecution that might be instituted for its violation." *Staub* v. *Mayor of Baxley*, 211 Ga. 1, 2, 83 S. E. 2d 606, 608.

[4] Mamie Merritt was also charged with the same offense and was tried with appellant and was likewise convicted and given the same sentence, but it has been stipulated that the judgment of conviction against her shall await, and conform with, the result of this appeal.

Those contentions were renewed in the Court of Appeals but that court declined to consider them. It stated that "[t]he attack should have been made against specific sections of the ordinance and not against the ordinance as a whole"; that "[h]aving made no effort to secure a license, the defendant is in no position to claim that any section of the ordinance is invalid or unconstitutional"; and that since it "appears that the attack was not made against any particular section of the ordinance as being void or unconstitutional, and that the defendant has made no effort to comply with any section of the ordinance . . . it is not necessary to pass upon the sufficiency of the evidence, the constitutionality of the ordinance, or any other phase of the case . . . ." The court then held that "[t]he trial court did not err in overruling the writ of certiorari" and affirmed the judgment of conviction. 94 Ga. App., at 24, 93 S. E. 2d, at 378–379.

At the threshold, appellee urges that this appeal be dismissed because, it argues, the decision of the Court of Appeals was based upon state procedural grounds and thus rests upon an *adequate* nonfederal basis, and that we are therefore without jurisdiction to entertain it. Hence, the question is whether that basis was an *adequate* one in the circumstances of this case. "Whether a pleading sets up a sufficient right of action or defense, grounded on the Constitution or a law of the United States, is necessarily a question of federal law; and where a case coming from a state court presents that question, this Court must determine for itself the sufficiency of the allegations displaying the right or defense, and is not concluded by the view taken of them by the state court." *First National Bank* v. *Anderson,* 269 U. S. 341, 346, and cases cited. See also *Schuylkill Trust Co.* v. *Pennsylvania,* 296 U. S. 113, 122–123, and *Lovell* v. *Griffin,* 303 U. S. 444, 450. As Mr. Justice Holmes said in *Davis* v. *Wechsler,* 263 U. S. 22, 24, "Whatever springes the State may set

for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." Whether the constitutional rights asserted by the appellant were ". . . given due recognition by the [Court of Appeals] is a question as to which the [appellant is] entitled to invoke our judgment, and this [she has] done in the appropriate way. It therefore is within our province to inquire not only whether the right was denied in express terms, but also whether it was denied in substance and effect, as by putting forward non-federal grounds of decision that were without any fair or substantial support . . . [for] if non-federal grounds, plainly untenable, may be thus put forward successfully, our power to review easily may be avoided." *Ward* v. *Love County,* 253 U. S. 17, 22, and cases cited.

The first of the nonfederal grounds relied on by appellee, and upon which the decision of the Court of Appeals rests, is that appellant lacked standing to attack the constitutionality of the ordinance because she made no attempt to secure a permit under it. This is not an adequate nonfederal ground of decision. The decisions of this Court have uniformly held that the failure to apply for a license under an ordinance which on its face violates the Constitution does not preclude review in this Court of a judgment of conviction under such an ordinance. *Smith* v. *Cahoon,* 283 U. S. 553, 562; *Lovell* v. *Griffin,* 303 U. S. 444, 452. "The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands." *Jones* v. *Opelika,* 316 U. S. 584, 602, dissenting opinion, adopted *per curiam* on rehearing, 319 U. S. 103, 104.

Appellee also contends that the holding of the Court of Appeals, that appellant's failure to attack "specific sections" of the ordinance rendered it unnecessary, under

Georgia procedure, "to pass upon . . . the constitutionality of the ordinance, or any other phase of the case . . . ," constitutes an adequate "non-federal ground" to preclude review in this Court. We think this contention is "without any fair or substantial support" (*Ward* v. *Love County, supra*) and therefore does not present an *adequate* nonfederal ground of decision in the circumstances of this case. The several sections of the ordinance are interdependent in their application to one in appellant's position and constitute but one complete act for the licensing and taxing of her described activities. For that reason, no doubt, she challenged the constitutionality of the whole ordinance, and in her objections used language challenging the constitutional effect of all its sections. She did, thus, challenge all sections of the ordinance, though not by number. To require her, in these circumstances, to count off, one by one, the several sections of the ordinance would be to force resort to an arid ritual of meaningless form. Indeed, the Supreme Court of Georgia seems to have recognized the arbitrariness of such exaltation of form. Only four years ago that court recognized that an attack on such a statute was sufficient if "the [statute] so challenged was invalid in every part for some reason alleged." *Flynn* v. *State,* 209 Ga. 519, 522, 74 S. E. 2d 461, 464 (1953). In enunciating that rule the court was following a long line of its own decisions. *Atlantic Loan Co.* v. *Peterson,* 181 Ga. 266, 269, 182 S. E. 15, 16–17 (1935); *Miller* v. *Head,* 186 Ga. 694, 708, 198 S. E. 680, 687–688 (1938); *Stegall* v. *Southwest Georgia Regional Housing Authority,* 197 Ga. 571, 30 S. E. 2d 196 (1944); *Krasner* v. *Rutledge,* 204 Ga. 380, 383, 49 S. E. 2d 864, 866 (1948).

We conclude that the decision of the Court of Appeals does not rest on an adequate nonfederal ground and that we have jurisdiction of this appeal.

The First Amendment of the Constitution provides: "Congress shall make no law . . . abridging the freedom of speech . . . ." This freedom is among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action; and municipal ordinances adopted under state authority constitute state action. *Lovell* v. *Griffin, supra,* at 450, and cases cited.

This ordinance in its broad sweep makes it an offense to "solicit" citizens of the City of Baxley to become members of any "organization, union or society" which requires "fees [or] dues" from its members without first applying for and receiving from the Mayor and Council of the City a "permit" (Sections I and II) which they may grant or refuse to grant (Section V) after considering "the character of the applicant, the nature of the . . . organization for which members are desired to be solicited, and its effects upon the general welfare of [the] citizens of the City of Baxley" (Section IV).

Appellant's first contention in this Court is that the ordinance is invalid on its face because it makes enjoyment of the constitutionally guaranteed freedom of speech contingent upon the will of the Mayor and Council of the City and thereby constitutes a prior restraint upon, and abridges, that freedom. Believing that appellant is right in that contention and that the judgment must be reversed for that reason, we confine our considerations to that particular question and do not reach other questions presented.

It will be noted that appellant was not accused of any act against the peace, good order or dignity of the community, nor for any particular thing she said in soliciting employees of the manufacturing company to join the union. She was simply charged and convicted for "soliciting members for an organization without a Per-

mit." This solicitation, as shown by the evidence, consisted solely of speaking to those employees in their private homes about joining the union.[5]

It will also be noted that the permit is not to be issued as a matter of course, but only upon the affirmative action of the Mayor and Council of the City. They are expressly authorized to refuse to grant the permit if they do not approve of the applicant or of the union or of the union's "effects upon the general welfare of citizens of the City of Baxley." These criteria are without semblance of definitive standards or other controlling guides governing the action of the Mayor and Council in granting or withholding a permit. Cf. *Niemotko* v. *Maryland,* 340 U. S. 268, 271–273. It is thus plain that they act in this respect in their uncontrolled discretion.

It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.

In *Cantwell* v. *Connecticut,* 310 U. S. 296, this Court held invalid an Act which proscribed soliciting money or any valuable thing for "any alleged religious, charitable or philanthropic cause" unless the "cause" is approved by the secretary of the public welfare council of the state. Speaking for a unanimous Court, Mr. Justice Roberts said:

> "It will be noted, however, that the Act requires an application to the secretary of the public welfare

---

[5] For that reason we are not here confronted with any question concerning the right of the city to regulate the pursuit of an occupation. Cf. *Thomas* v. *Collins,* 323 U. S. 516.

council of the State; that he is empowered to determine whether the cause is a religious one, and that the issue of a certificate depends upon his affirmative action. If he finds that the cause is not that of religion, to solicit for it becomes a crime. He is not to issue a certificate as a matter of course. His decision to issue or refuse it involves appraisal of facts, the exercise of judgment, and the formation of an opinion. He is authorized to withhold his approval if he determines that the cause is not a religious one. Such a censorship of religion . . . is a denial of liberty protected by the First Amendment and included in the liberty which is within the protection of the Fourteenth. . . . [T]o condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution." 310 U. S., at 305, 307.

To the same effect are *Lovell* v. *Griffin, supra,* at 451, 452; [6] *Hague* v. *C. I. O.,* 307 U. S. 496, 516; [7] *Schneider* v.

---

[6] The ordinance involved in that case proscribed the distribution of literature in the City of Griffin "without first obtaining written permission from the City Manager . . . ," which he might grant or withhold in his discretion. 303 U. S., at 447. This Court, in reversing a conviction under that ordinance, said: "Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest form." *Id.,* at 452.

[7] There the ordinance proscribed the leasing of a hall for a public speech or the holding of public meetings "without a permit from the Chief of Police." 307 U. S., at 501. Members of a labor union sought permission to hold public meetings in the city for the "organization of unorganized workers into labor unions." *Id.,* at 504. Permission was refused on the ground that such meetings would cause disorder. They then sought and obtained an injunction prohibiting the city from interfering with their rights of free speech and peaceable

*State,* 308 U. S. 147, 163, 164; [8] *Largent* v. *Texas,* 318 U. S. 418, 422; [9] *Jones* v. *Opelika,* 319 U. S. 103, adopting *per curiam* on rehearing the dissenting opinion in 316 U. S. 584, 600–602; [10] *Niemotko* v. *Maryland,* 340 U. S. 268, 271; [11] *Kunz* v. *New York,* 340 U. S. 290, 293.[12]

---

assembly. The case came here on certiorari and this Court affirmed. In the course of his opinion, Mr. Justice Roberts said the ordinance was "void upon its face" and that ". . . uncontrolled official suppression [of free speech and peaceable assembly] cannot be made a substitute for the duty to maintain order in connection with the exercise of the right." *Id.,* at 516.

[8] There an ordinance of Irvington, New Jersey, in effect banned "communication of any views or the advocacy of any cause from door to door" (308 U. S., at 163), without "a written permit from the Chief of Police . . . ." *Id.,* at 157. This Court held the ordinance invalid as a prior restraint upon First Amendment rights and said that such an ordinance "strikes at the very heart of the constitutional guarantees." *Id.,* at 164.

[9] This Court said: "The mayor issues a permit only if after thorough investigation he 'deems it proper or advisable.' Dissemination of ideas depends upon the approval of the distributor by the official. This is administrative censorship in an extreme form. It abridges the freedom of religion, of the press and of speech guaranteed by the Fourteenth Amendment." 318 U. S., at 422.

[10] Chief Justice Stone said: "[H]ere it is the prohibition of publication, save at the uncontrolled will of public officials, which transgresses constitutional limitations and makes the ordinance void on its face." 316 U. S., at 602.

[11] There the city allowed use of its park for public meetings, but by custom a permit was required from its park commissioner. A religious group known as Jehovah's Witnesses scheduled several Bible talks to be held in the city park. They applied for a permit to do so, but it was refused. Later they proceeded to hold such a meeting without a permit and when Niemotko opened the meeting he was arrested and later convicted for disturbing the peace, though the meeting was orderly and the real cause was the failure to have a permit. This Court reversed. After pointing out there were no standards governing the discretion of the park commissioner in granting or refusing such permits and referring to *Hague* v. *C. I. O., supra;*

[*Footnote 12 appears on p. 325.*]

It is undeniable that the ordinance authorized the Mayor and Council of the City of Baxley to grant "or refuse to grant" the required permit in their uncontrolled discretion. It thus makes enjoyment of speech contingent upon the will of the Mayor and Council of the City, although that fundamental right is made free from congressional abridgment by the First Amendment and is protected by the Fourteenth from invasion by state action. For these reasons, the ordinance, on its face, imposes an unconstitutional prior restraint upon the enjoyment of First Amendment freedoms and lays "a forbidden burden upon the exercise of liberty protected by the Constitution." *Cantwell* v. *Connecticut, supra,* at 307. Therefore, the judgment of conviction must fall.

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE CLARK joins, dissenting.

This is one of those small cases that carry large issues, for it concerns the essence of our federalism—due regard for the constitutional distribution of power as be-

*Lovell* v. *Griffin, supra,* and other cases, it said: "It is clear that all that has been said about the invalidity of such limitless discretion must be equally applicable here. . . . The right to equal protection of the laws, in the exercise of those freedoms of speech and religion protected by the First and Fourteenth Amendments, has a firmer foundation than the whims or personal opinions of a local governing body." 340 U. S., at 272.

[12] There it was said: "This interpretation allows the police commissioner, an administrative official, to exercise discretion in denying subsequent permit applications [to hold outdoor religious meetings] on the basis of his interpretation, at that time, of what is deemed to be conduct condemned by the ordinance. We have here, then, an ordinance which gives an administrative official discretionary power to control in advance the right of citizens to speak on religious matters on the streets of New York. As such, the ordinance is clearly invalid as a prior restraint on the exercise of First Amendment rights." 340 U. S., at 293.

tween the Nation and the States, and more particularly the distribution of judicial power as between this Court and the judiciaries of the States.[1]

An ordinance of the City of Baxley, Georgia,[2] provides that anyone who seeks to solicit members for any organization requiring the payment of dues shall first apply to the Mayor and Council of Baxley for a permit to carry on such solicitation. The ordinance further provides a detailed procedure for making the application, standards for granting the permit, the fee to be charged, and sanctions for failure to comply with the ordinance. Appellant was arrested for violation of the ordinance and was ordered to appear before the Mayor's Court of the City. By a plea in abatement she attacked the ordinance as in conflict with provisions of the State and the United States Constitutions and with the National Labor Relations Act.[3] Her plea was overruled, and the cause proceeded to trial. The undisputed evidence established

---

[1] The peculiar demands made upon the judiciary by a federal system such as ours were recently indicated by the Chief Justice of Australia, Sir Owen Dixon:

"[F]ederalism is a form of government the nature of which is seldom adequately understood in all its bearings by those whose fortune it is to live under a unitary system. The problems of federalism and the considerations governing their solution assume a different aspect to those whose lives are spent under the operation of a federal Constitution, particularly if by education, practice and study they have been brought to think about the constitutional conceptions and modes of reasoning which belong to federalism as commonplace and familiar ideas. A unitary system presents no analogies and indeed, on the contrary, it forms a background against which many of the conceptions and distinctions inherent in federalism must strike the mind as strange and exotic refinements." *O'Sullivan* v. *Noarlunga Meat Ltd.,* 94 C. L. R. 367, 375 (1956).

[2] The ordinance is set forth in full in the margin of the opinion of the Court in this case, *ante,* p. 314.

[3] The relevant portions of appellant's plea in abatement are set forth in an Appendix to this opinion, p. 335, *infra.*

that appellant was an employee of the International Ladies' Garment Workers Union, an organization that required dues of its members, that she was soliciting members for the union in Baxley, and that she had not applied for a permit as required by the city ordinance. Appellant was convicted and sentenced to pay a fine of $300 or serve 30 days in the city jail.

Appellant applied to the Superior Court of the county for a writ of certiorari, repeating the contentions she had made in her plea in abatement. The cause was tried *de novo* by the court without a jury and the judgment of the Mayor's Court was affirmed.

On writ of error, the Georgia Court of Appeals reviewed the judgment of the Superior Court. It noted that appellant had made no effort to secure a permit and that her constitutional attack should have been made specifically against a particular section or sections of the ordinance and not against the ordinance as a whole. On this doctrine of Georgia appellate procedure it cited *Anthony* v. *City of Atlanta,* 66 Ga. App. 504, 505, 18 S. E. 2d 81–82, which in turn cited *Glover* v. *City of Rome,* 173 Ga. 239, 160 S. E. 249, and concluded that the issue of the constitutionality of the ordinance had not been properly raised. Accordingly, the Court of Appeals sustained the conviction. 94 Ga. App. 18, 93 S. E. 2d 375. The Supreme Court of Georgia denied appellant's application for a writ of certiorari, and the case came here on appeal from the Court of Appeals of Georgia.

The jurisdictional basis for this appeal is 28 U. S. C. § 1257, which had its origin in the famous twenty-fifth section of the Act of September 24, 1789, 1 Stat. 73, 85. That seemingly technical procedural provision of the First Judiciary Act has served as one of the most nationalizing forces in our history. By that section, as construed in *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, strongly reinforced by *Cohens* v. *Virginia,* 6 Wheat. 264, the denial of

a claim of a federal right in the final judgment of the highest available court of a State could be brought for review at the bar of this Court. This amenability of state action to the judicial arbitrament of the Nation's Supreme Court has been recognized by leading historians as one of the shaping influences in the fusion of the States into a Nation. Naturally enough, vigorous efforts were made, both before and after the Civil War, to repeal § 25, but without avail. See Warren, Legislative and Judicial Attacks on the Supreme Court of the United States, A History of the Twenty-Fifth Section of the Judiciary Act, 47 Amer. L. Rev. 1, 161; H. R. Rep. No. 43, 21st Cong., 2d Sess.; Hart and Wechsler, "Note on the Attacks Upon the Jurisdiction," The Federal Courts and the Federal System, 418. The power of this Court to review denials by state courts of federal claims has never been qualified.[4]

While the power to review the denial by a state court of a nonfrivolous claim under the United States Constitution has been centered in this Court, carrying with it the responsibility to see that the opportunity to assert such a claim be not thwarted by any local procedural device, equally important is observance by this Court of

---

[4] It was not enlarged until 1914, 38 Stat. 790, now 28 U. S. C. § 1257 (3). It had been assumed that state courts would not unduly invoke a federal right to cut down state authority. But judicial attitudes on the part of state courts toward modern social legislation led Congress to establish a new principle of appellate control over state courts by conferring on this Court jurisdiction to review judgments by the highest court of a State upholding as well as denying federal rights.

More immediately relevant is the fact that, despite the centralizing tendency generated by the outcome of the Civil War, this Court rejected a vigorous drive to extend the scope of our review so as to cover all questions in the record, even those of state concern, where the case is properly here on denial of some federal claim. This attempted extension was rejected as a "radical and hazardous change of a policy vital in its essential nature to the independence of the State courts . . . ." *Murdock* v. *Memphis,* 20 Wall. 590, 630.

the wide discretion in the States to formulate their own procedures for bringing issues appropriately to the attention of their local courts, either in shaping litigation or by appeal. Such methods and procedures may, when judged by the best standards of judicial administration, appear crude, awkward and even finicky or unnecessarily formal when judged in the light of modern emphasis on informality. But so long as the local procedure does not discriminate against the raising of federal claims and, in the particular case, has not been used to stifle a federal claim to prevent its eventual consideration here, this Court is powerless to deny to a State the right to have the kind of judicial system it chooses and to administer that system in its own way. It is of course for this Court to pass on the substantive sufficiency of a claim of federal right, *First National Bank* v. *Anderson,* 269 U. S. 341, 346, but if resort is had in the first instance to the state judiciary for the enforcement of a federal constitutional right, the State is not barred from subjecting the suit to the same procedures, *nisi prius* [5] and appellate, that govern adjudication of all constitutional issues in that State. *Edelman* v. *California,* 344 U. S. 357; *Parker* v. *Illinois,* 333 U. S. 571. In *Nickel* v. *Cole,* 256 U. S. 222, 225, we said, "[W]hen as here there can be no pretence that the [state] Court adopted its view in order to evade a constitutional issue, and the case has been decided upon grounds

[5] "While it is true that a substantive federal right or defense duly asserted cannot be lessened or destroyed by a state rule of practice, yet the claim of the plaintiff in error to a federal right not having been asserted at a time and in a manner calling for the consideration of it by the state Supreme Court under its established system of practice and pleading, the refusal of the trial court and of the Supreme Court to admit the testimony tendered in support of such claim is not a denial of a federal right which this court can review, *Baldwin* v. *Kansas,* 129 U. S. 52, *Oxley Stave Co.* v. *Butler County,* 166 U. S. 648 . . . ." *Atlantic Coast Line R. Co.* v. *Mims,* 242 U. S. 532, 536–537.

that have no relation to any federal question, this Court accepts the decision whether right or wrong."

The relevance of a state procedure requiring that constitutional issues be presented in their narrowest possible scope is confirmed by the practice of this Court. The Court has long insisted, certainly in precept, on rigorous requirements that must be fulfilled before it will pass on the constitutionality of legislation, on avoidance of such determinations even by strained statutory construction, and on keeping constitutional adjudication, when unavoidable, as narrow as circumstances will permit. See the classic statement of the unanimous Court in *Liverpool, N. Y. & P. S. S. Co.* v. *Commissioners of Emigration,* 113 U. S. 33, 39, and "a series of rules," drawn from a long sequence of prior decisions by Mr. Justice Brandeis, in his well-known concurring opinion, frequently cited and always approvingly, in *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 346–348. Even though its action may result in the disadvantages and embarrassments of keeping open doubtful questions of constitutionality, this Court will consider only those very limited aspects of a statute that alone may affect the rights of a particular litigant before the Court. See *Muskrat* v. *United States,* 219 U. S. 346, 361–362; *Massachusetts* v. *Mellon,* 262 U. S. 447. A statute may be found invalid in some of its parts but valid in others, see *Dorchy* v. *Kansas,* 264 U. S. 286, 289–290; it may be valid at one time and not another, see *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543, 547–548; it may be valid under one state of facts but not another, see *Kansas City Southern R. Co.* v. *Anderson,* 233 U. S. 325, 329–330; it may be valid as to one class of persons and invalid as to others, see *New York ex rel. Hatch* v. *Reardon,* 204 U. S. 152, 160–161. It is because the exercise of the right to declare a law unconstitutional is "the most important and delicate duty of this court," and because that right "is not given to [the

Court] . . . as a body with revisory power over the action of Congress," *Muskrat* v. *United States, supra,* at 361, nor, it may be added, over the action of the forty-eight States, that this Court has from the beginning demanded of litigants that they show in precisely what way and to what extent incursions have been made into their federally protected rights and rules have been developed designed to narrow as closely as possible the issues presented by such claims. Surely a state court is not to be denied the like right to protect itself from the necessity—sometimes even the temptation—of adjudicating overly broad claims of unconstitutionality. Surely it can insist that such claims be formulated under precise (even if, in our view, needlessly particularized) requirements and restricted to the limited issues that concrete and immediately pressing circumstances may raise.

An examination of the whole course of Georgia decisions leaves one with the clear conviction that the procedural rule applied by the Court of Appeals of Georgia in this case was intended to be responsive to the same problems that have influenced the important considerations of judicial policy governing the administration of this Court's business. The cases relied upon by the Georgia court in this case are part of a long line of decisions holding a comprehensive, all-inclusive challenge to the constitutionality of a statute inadequate and requiring explicit particularity in pleadings in order to raise constitutional questions. Those cases rest essentially on a recognition of the gravity of judicial invalidation of legislation. See, *e. g., Dade County* v. *State,* 201 Ga. 241, 245, 39 S. E. 2d 473, 476–477. They require the pleader to allege the specific portion of the challenged legislation. Thus, allegations of unconstitutionality directed at a group of 16 sections of the Criminal Code, *Rooks* v. *Tindall,* 138 Ga. 863, 76 S. E. 2d 378; a single named "lengthy section" of a statute, *Crapp* v. *State,* 148

Ga. 150, 95 S. E. 2d 993; a single section of a city charter amendment, *Glover* v. *City of Rome,* 173 Ga. 239, 160 S. E. 249; a named Act of the General Assembly, *Wright* v. *Cannon,* 185 Ga. 363, 195 S. E. 2d 168; and a 5-section chapter of the Code, *Richmond Concrete Products Co.* v. *Ward,* 212 Ga. 773, 95 S. E. 2d 677, were held "too general" or "too indefinite" to raise constitutional questions because of their failure to define with particularity what portions offended claimed constitutional rights. The Georgia rule is designed to apply, within this touchy scope of constitutional litigation, the requirement of the Georgia Code, Ga. Code Ann., 1956, § 81–101, that pleadings shall "plainly, fully, and distinctly" set forth the pleader's cause of action, see *Richmond Concrete Products Co.* v. *Ward, supra,* at 775, 95 S. E. 2d, at 679.

There is nothing frivolous or futile (though it may appear "formal") about a rule insisting that parties specify with arithmetic particularity those provisions in a legislative enactment they would ask a court to strike down. This is so, because such exactitude helps to make concrete the plaintiffs' relation to challenged provisions. First, it calls for closer reflection and greater responsibility on the part of one who challenges legislation, for, in formulating specific attacks against each provision for which an infirmity is claimed, the pleader is more likely to test his claims critically and to reconsider them carefully than he would be if he adopted a "scatter-shot" approach. Secondly, the opposing party, in responding to a particularized attack, is more likely to plead in such a way as to narrow or even eliminate constitutional issues, as where he admits that a specific challenged provision is invalid.[6] Finally, where the parties identify particular

---

[6] One of the most vulnerable provisions of this ordinance, the drastically high license fee, was taken out of controversy in this suit by the respondent's admission of its invalidity. It is not out of question that more specific pleading might have drawn similar admissions as to other allegedly objectionable portions of the ordinance.

language in a statute as allegedly violating a constitutional provision, the court will often be able to construe the words in such a way as to render them inoffensive. The ordinance involved in this case might, for example, have been held inapplicable to the type of organization to which appellant belongs had her objections been directed at the word "union" in § I; it might have been held to provide for the automatic granting of a permit upon registration had appellant's objections been directed specifically at the standard set forth in § IV.[7]  Sophisticated as such a construction might appear, it would have entailed less astute reading than has been resorted to by this Court in its avoidance of constitutional adjudication.

Of course, even if the Georgia rule is intrinsically reasonable and thus entitled to respect by this Court, we must be sure that it has not been applied arbitrarily in the case before us.   Appellant attacks a nine-section ordinance with nine charges of invalidity, several of which (although it is difficult to say precisely how many) involve federal claims.   It may be—but it certainly is not clearly so—that with little expenditure of time and effort, and with little risk of misreading appellant's charges, a court could determine exactly what it is about the Baxley ordinance that allegedly infringes upon appellant's constitutional rights.   But rules are not made solely for the easiest cases they govern.   The fact that the reason for a rule does not clearly apply in a given situation does not eliminate the necessity for compliance with the rule.   So long as a reasonable rule of state procedure is consistently applied, so long as it is not used as a means for evading vindication of federal rights, see *Davis* v. *Wechsler,* 263 U. S. 22, 24–25, it should not be refused applicability. There is no indication whatever in the case before us that

---

[7] Thus, it is an allowable assumption that the Georgia court might construe § VI so as to make it provide that a person in appellant's situation need only apply and pay a fee in order to obtain the permit.

the Georgia Court of Appeals applied this well-established rule of pleading arbitrarily or inadvisedly; this case cannot be said to stand out, among the many cases in which the rule has been applied, as a deviation from the norm.

The local procedural rule which controlled this case should not be disregarded by reason of a group of Georgia cases which, while recognizing and reaffirming the rule of pleading relied on by the Court of Appeals below, suggest a limited qualification. It appears that under special circumstances, where a generalized attack is made against a statute without reference to specific provisions, the court will inquire into the validity of the entire body of legislation challenged. The cases on which the Court relies as establishing this as the prevailing rule in Georgia strongly indicate that this approach will be used only where an allegation of unconstitutionality can be disposed of (one way or the other) relatively summarily and not where, as here, difficult issues are raised. In the only case cited by the Court in which the Georgia Supreme Court overturned a statute on the basis of generalized allegations, *Atlantic Loan Co.* v. *Peterson,* 181 Ga. 266, 182 S. E. 15, the result was "plainly apparent." 181 Ga., at 274, 182 S. E., at 19. In the other cases cited, *Miller* v. *Head,* 186 Ga. 694, 198 S. E. 680; *Stegall* v. *Southwest Georgia Regional Housing Authority,* 197 Ga. 571, 30 S. E. 2d 196; *Krasner* v. *Rutledge,* 204 Ga. 380, 49 S. E. 2d 864, and *Flynn* v. *State,* 209 Ga. 519, 74 S. E. 2d 461, the court gave varying degrees of recognition to this approach, refusing altogether to apply it in *Flynn,* where the court declined to accept "the burden of examining the act section by section and sentence by sentence." 209 Ga., at 522, 74 S. E. 2d, at 464. Certainly it cannot be said that the Court of Appeals was out of constitutional bounds in failing to bring the instant case within the purview of whatever exception can be said to have been

spelled out by these cases or that it is for this Court to formulate exceptions to the valid Georgia rule of procedure.

The record before us presents not the remotest basis for attributing to the Georgia court any desire to limit the appellant in the fullest opportunity to raise claims of federal right or to prevent an adverse decision on such claims in the Georgia court from review by this Court. Consequently, this Court is left with no proper choice but to give effect to the rule of procedure on the basis of which this case was disposed of below. "Without any doubt it rests with each State to prescribe the jurisdiction of its appellate courts, the mode and time of invoking that jurisdiction, and the rules of practice to be applied in its exercise; and the state law and practice in this regard are no less applicable when Federal rights are in controversy than when the case turns entirely upon questions of local or general law. *Callan* v. *Bransford,* 139 U. S. 197; *Brown* v. *Massachusetts,* 144 U. S. 573; *Jacobi* v. *Alabama,* 187 U. S. 133; *Hulbert* v. *Chicago,* 202 U. S. 275, 281; *Newman* v. *Gates,* 204 U. S. 89; *Chesapeake & Ohio Railway Co.* v. *McDonald,* 214 U. S. 191, 195." *John* v. *Paullin,* 231 U. S. 583, 585.

The appeal should be dismissed.

## APPENDIX TO OPINION OF MR. JUSTICE FRANKFURTER.

### PORTIONS OF APPELLANT'S PLEA IN ABATEMENT.

"2. Defendant alleges that the prosecution of said case should be abated upon the ground that said ordinance is unconstitutional and void for the reasons hereinafter stated.

"(a) Defendant shows that the ordinance with which she is charged to have violated shows on its face that it

is repugnant to and violative of the 1st and 14th Amendments to the Constitution of the United States in that it places a condition precedent upon, and otherwise unlawfully restricts the defendant's freedom of speech as well as freedom of the press and freedom of lawful assembly. Defendant shows that the right to engage in organizing labor unions is an inherent constitutional right consisting of soliciting members by pointing out to workers the advantage of belonging to labor unions, such solicitation being done by word of mouth, by pamphlets or other publications and by holding meetings of those desirous to be informed of the facts about labor unions. Defendant shows that such acts are restricted and limited by said ordinance so as to place a condition precedent, by way of the payment of a license fee, or the privilege of engaging in the constitutional rights of free speech, free press and free assembly.

"(b) Defendant shows that said ordinance is repugnant to and violative of Section 7 of the National Labor Relations Act, as amended, and tends to contravene said Act and the public policy of the United States as contained in said Act by establishing unwarranted conditions upon the right of defendant to participate in the labor activities secured by the National Labor Relations Act, as amended, and the public policy of the United States. Thus the ordinance which interferes with such rights is in direct conflict with superior Federal legislation and is therefore unconstitutional, null and void.

"(c) Defendant shows that said ordinance is not a valid ordinance in that it denies equal protection of the laws to defendant and others like defendant in that said ordinance, which requires the payment of large sums of money, is founded upon an unreasonable and invalid classification of persons which must pay the confiscatory fee which is set out in the ordinance. Said ordinance makes the payment of the fee conditioned upon the mere

fact that a person receives remuneration for his efforts in soliciting membership in an organization. Such classification is not a reasonable classification for imposing the payment of a fee upon defendant and others similarly situated.

"(d) Defendant shows that said ordinance is invalid in that it shows on its face that it is a regulatory measure imposing a flat tax upon a privilege which is excessive in amount. The sums of money charged under said ordinance are of such amount as to be wholly unreasonable, confiscatory and prohibitory. The amounts of money charged in said ordinance are so large that it could not reasonably be paid by anyone desiring to organize any sort of organization and therefore exists solely to prevent and deprive defendant and others like defendant from organizing members in their organization and exercising rights previously herein set out. The ordinance shows on its face that it is patently a device intended to prevent organization within the city limits in behalf of labor unions. It is a well known fact this day and time that labor unions constitute the vast majority of organizations which send paid representatives into communities for the purpose of organizing and soliciting membership. The above purposes are illegal and improper and is a misuse and abuse of the law-making powers of the plaintiff city, but nevertheless will be successful in depriving defendant of her rights unless this court declares said ordinance null and void.

"(e) Defendant shows that said ordinance is an invalid regulating in that it leaves within the discretion of the Mayor and City Council, with no form of appeal or any objective or definitive standards, the refusal or granting of the license required.

"(f) Defendant shows that said ordinance is void in that the same is repugnant to and violative of Article 1, Section 1, paragraph 3 of the Constitution of the State

of Georgia in that the same is not impartial but is unreasonable and arbitrary and contravenes said Section.

"(g) Defendant shows that said ordinance is unconstitutional and void as violative of Article 1, Section 1, Paragraph 3 of the Constitution of Georgia in that defendant is deprived of her liberty and property without due process of law.

"(h) Defendant shows that said ordinance is not a valid ordinance enacted for any legitimate purpose to benefit the citizens of Baxley, Georgia, but that said ordinance on its face shows that it is unreasonable, confiscatory, prohibitory and discriminatory, and that it exists solely for the purpose of depriving and denying defendant and others from engaging in a lawful occupation and that said ordinance is for the purpose of preventing the organization of labor unions within the city limits of Baxley, Georgia.

"(i) Defendant avers that said ordinance is patently void in that the same is a misuse and abuse of the police power of the City of Baxley, Georgia, in an effort to deprive defendant and others like defendant of their rights herein referred to through the subterfuge of a city ordinance.

"3. Defendant alleges that because of the aforesaid reasons said ordinance is unconstitutional and void, and should be so declared by the court, and the action against defendant for violation thereof abated."