Foster, J.
These consolidated appeals, brought on constitutional grounds, involve two applications: (a) one made by petitioner-appellant and its New York subscribers to incorporate as a domestic membership corporation under section 10 of the Membership Corporations Law; (b) an application made to the Secretary of State to accept and file a certificate of incorporation which does not have the approval of a Justice of the Supreme Court as required by statute (Membership Corporations Law, *380 § 10; General Corporation Law, § 211, subd. 2). For the purposes of this opinion we are concerned chiefly with the first-named application.
The proposed certificate of incorporation, as presented for the approval of a Justice of the Supreme Court, listed the following charter purposes:
“ (a) to promote the right to individual freedom of choice and association, constituting the right of the individual to associate with only those persons with whom he desires to associate;
“ (b) to conduct itself, and to encourage, promote, and aid in scientific research into problems engendered by a multicultural society, into problems of intergroup relations, in areas of ethnic characteristics and patterns, and into the implications and effects of such problems on freedom of choice and association, and to publish and to encourage, promote, aid and assist in publication of the results of such research in suitable scholarly periodicals and other publications;
“(c) to assist in the elimination of barriers to individual freedom of choice and its exercise in specific instances, as well as preventing and guarding against deprivation of this right at large; and
“ (d) to find and promote the means through freedom of choice and association by which the numerous groups in our multicultural society can find their fullest development.”
Approval was denied (Matter of Association for Freedom of Choice, 17 Misc 2d 1012, 1013). In his opinion the Justice said: ‘ ‘ In passing upon an application for the approval of a membership corporation, the duty of the court is not merely to see to it that the requirements of the statute have been met, but also to judicially determine whether the objects and purposes of the proposed corporation are lawful, in accord with public policy and not injurious to the community. ’ ’ Subsequently the same ' Justice, when requested to reconsider his decision, said in another opinion: “ Certainly the sponsors of the proposed membership corporation are completely free to associate for the purposes they spelled out in the proposed certificate. * * * But they may not compel the State to grant them, for these purposes, the benefits and privileges of a membership corporation.” (18 Misc 2d 534, 535.)
*381 Thus, the issue at the Supreme Court ex parte level was clearly drawn to the effect that although the purposes expressed in the proposed certificate were not unlawful, nevertheless its sponsors were not entitled to incorporate. The conclusion, therefore, must be drawn that denial of approval was based upon public policy, or injury to the community, or both, as envisaged by the Justice before whom the matter was placed.
Subsequently, appellant made an application to the Appellate Division, Second Department, for an order directing the Justice who had denied approval for the proposed certificate to annul and revoke both of his opinions, and approve the certificate. The AppeEate Division denied this application and granted the Justice’s cross motion to dismiss the petition on the ground of insufficiency as a matter of law (10 A D 2d 873). Appellant thereafter appealed to this court from the order entered upon the decision of the AppeEate Division, alleging that constitutional questions are presented, and it is this appeal with which we are chiefly concerned. The other appeal from an order of the AppeEate Division, First Department, which denied rehef by way of mandamus against the Secretary of State, presents somewhat different issues and is really superfluous so far as the main issue is concerned, i.e., whether the courts have constitutionaEy applied the provisions of section 10 of the Membership Corporations Law.
This statute has been in effect for many years without change of language significant here, and was originally derived from section 1 of chapter 319 of the Laws of 1848. Stripped of technical requirements and exceptions not pertinent here, its language is simple: ‘ ‘ Five or more persons may become a membership corporation for any lawful purpose * * *. Every certificate of incorporation filed under this chapter shall have endorsed thereon or annexed thereto the approval of a justice of the supreme court of the judicial district in which the office of the corporation is to be located. ’ ’
' With some exceptions not relevant here, no standards are set up to guide the exercise of judicial power. It would seem logical, therefore, to assume that the function of judicial scrutiny as intended by the Legislature was to ascertain whether the proposed incorporation was for a lawful purpose. This was a function which could not be handily carried out by the Legisla *382 ture, or readily left to a ministerial officer such as the Secretary of State, hence it was committed to the judiciary, but only that and nothing more so far as the language of the statute is concerned.
From time to time, however, the courts below have enlarged this comparatively simple and narrow judicial function and have engrafted thereon the requirement of “ a finding that the objects and purposes of the proposed corporation are in accord with public policy * * * and not injurious to the community ” (Matter of Daughters of Israel Orphan Aid Soc., 125 Misc. 217, 219). Since the case cited was decided in 1925, many decisions have followed its reasoning, in effect that a Justice is at liberty to grant or deny applications based on his personal notion of what is contrary to public policy or injurious to the community.
We feel impelled to hold these views erroneous. In the first place the public policy of the State is not violated by purposes which are not unlawful. To hold otherwise would be a contradiction in terms. In the second place the test as to what may be injurious to the community is too vague, indefinite and elusive to serve as an objective judicial standard. Within such a scope the individual Justice would he at liberty to indulge in his own personal predilections as to the purposes of a proposed corporation, and impose his own personal views as to the social, political and economic matters involved. This is the direct antithesis of judicial objectivity, especially in an ex parte proceeding where no evidence is taken.
The Attorney-General, in his very comprehensive brief, says that the constitutionality of section 10 of the Membership Corporations Law has not been attacked since its original enactment in 1848. This is true, so far as we can discover, insofar as any court test is concerned, but the statute or rather the manner of its construction and application by the courts of this State has been heavily criticized by legal students and scholars (55 Col. L. Rev. 380 [1955]; 66 Yale L. J. 545, 550 [1957]; 6 Howard L. J. 169 [1960]; 46 Cornell L. Q. 290 [1961]; Dwight, Objections to Judicial Approval of Non-Profit Corporations, 12 Business Lawyer 454 [1957]).
Many fundamental concepts are involved that are akin to freedom of association, for instance freedom of expression, and *383 the latter, of course, cannot be limited to ideas that are palatable only to the majority withont impinging on the constitutional rights of a minority. But we think an enlarged discussion of such concepts is unnecessary, and we limit our expression to the foregoing observations directly applicable to the statute involved. We agree with the courts below that the purposes expressed in the proffered certificate of incorporation are not unlawful, and hence we can find no legal basis for its rejection. The reasons assigned by the courts below are, in our opinion, untenable. It is perfectly lawful for an individual or group of individuals to agitate for the repeal or modification of any law on the statute books of the State; or even for a change in the form of the State government itself, provided such agitation is not coupled with the advocacy of force and violence. Such activity is not against public policy whether indulged in by an individual or a membership corporation, but of course approval of a corporate charter devoted to such a purpose does not imply approval of the views of its sponsors. It simply means that their expression is lawful, and their sponsors entitled to a vehicle for such expression under a statute which cannot constitutionally be made available only to those who are in harmony with the majority viewpoint. Dissenting organizations have equal rights, so far as freedom of expression is concerned, as any other groups, and are entitled to an equal and objective application of the statute.
The order of the Appellate Division, Second Department, in the proceeding against J. Irwin Shapiro, Acting Justice of the Supreme Court, Queens County, should be reversed, withont costs, and the matter remitted to the Appellate Division for proceedings consistent with this opinion.
The order of the Appellate Division, First Department, denying relief by way of mandamus against the Secretary of State should he affirmed, withont costs.