James SMITH et al., Plaintiffs,

v.

Heber LADNER et al., Defendants.

Civ. A. No. 3905.

United States District Court
S. D. Mississippi,
Jackson Division.

Aug. 8, 1968.

See also D.C., 260 F.Supp. 918.

Carsie A. Hall, Jack Young, Edward Tucker, and Jonathan Shapiro, Jackson, Miss., for plaintiffs.

Joe T. Patterson, Atty. Gen. of Mississippi, and Martin McLendon, Asst. Atty. Gen., Jackson, Miss., for defendants.

Before COLEMAN, Circuit Judge, and COX and RUSSELL, District Judges.

COLEMAN, Circuit Judge:

This litigation challenges § 5310.1 of the Mississippi Code of 1942[1] regulating

1. § 5310.1 Corporate charters—nonprofit nonshare corporations.

1. The local lodges, chapters or councils, by whatever name known, of the Masons, Odd Fellows, Knights of Pythias, Elks, Woodmen of the World, and other fraternal organizations, together with temperance societies and charitable associations, schools, churches, literary institutions, lyceum associations, religious societies, fire companies, mechanics associations, fair associations, agricultural societies, civic improvement societies, associations for the establishment of college scholarships on a long-term payment plan, corporations to own and operate rural waterworks systems, rural sewage disposal systems, to provide uniform low cost multi-family housing, cemeteries and corporations for dental services, medical and surgical purposes or for establishing, maintaining and operating local clinical, pathological, medical or surgical research laboratories, hospitals, institutions of learning, and gymnasiums, may likewise be incorporated on the application of any three (3) members, all of whom shall be adult resident citizens of the State of Mississippi, authorized by any of the said organizations, in its minutes, to apply for the charter.

2. The three (3) persons authorized as above provided shall prepare an instrument to be styled: "The charter of incorporation of (naming corporation)," and containing in appropriate paragraphs the following information: (1) the corporate title of said company; (2) the names and post office addresses of the incorporators; (3) the domicile of the corporation in this state; (4) a statement that the corporation is nonprofit and that no shares of stock are to be issued; (5) the period of existence shall be stated as perpetual; (6) the purposes for which the corporation is created, not contrary to law, including a statement of the rights and powers that are to be exercised by said corporation, which said rights and powers shall be limited to those reasonably necessary to accomplish the stated purpose of the association being incorporated; (7) such corporation shall not be required to make publication of their charters, shall issue no shares of stock, shall divide no dividends or profits among their members, shall make expulsion the only remedy for non-payment of dues, shall vest in each member the right to one vote in the election of all officers, shall make the loss of membership, by death or otherwise, the termination of all interest of such members in the corporate assets, and there shall be no individual liabilities against the members for corporate debts, but the entire corporate property shall be liable for the claims of creditors; (8) said instrument, when signed by each of the incorporators and acknowledged by each before a notary public or other officer authorized by law to take acknowledgments may be filed with the Secretary of State at any time thereafter within six (6) months of the date of the last acknowledgment. The Secretary of State, upon receipt of such instrument, shall endorse upon it the following:

"Received at the office of the Secretary of State, this, the _____ day of _____, A.D., _____, together with the sum of $_____ deposited to cover the recording fee and referred to the Attorney General for his opinion.

(Signed)_____
Secretary of State"

Upon receipt of the foregoing application from the Secretary of State, the Attorney General, or his assistants at his direction, may, in his discretion, make such investigation as he may deem necessary to determine in his opinion whether the issuance of the charter to the corporation as applied for is contrary to the best interest of the State of Mississippi, and the applicants and all persons inested in such application shall cooperate with the Attorney General; and thereupon should he be of the opinion that the issuance of the charter as applied for is not to the best interest of the State of Mississippi, even though the application on its face is not violative, of the Constitution or the Laws of the State of Mississippi, he shall prepare and submit to the Governor of the State of Mississippi his opinion why the issuance of such charter would not be to the best interest of the State of Mississippi, and

and prescribing the procedure for the issuance of charters to non-profit corporations, as being unconstitutional and void. Specifically, it is alleged that the statute vests unconstitutionally broad discretion in the Governor to grant or deny non-profit corporate charters. To the extent hereinafter indicated, we agree with the challengers.

■ Section 5310.1 provides that an application for a charter of incorporation for a non-profit corporation must be submitted to the Secretary of State, who in turn submits it to the Attorney General. After receiving the application,

"the Attorney General, or his assistants at his direction, may, in his discretion, make such investigation as he may deem necessary to determine in his opinion whether the issuance of the charter to the corporation as applied for is contrary to the best interest of the State of Mississippi."

which shall be by separate document accompanying the application.

The Attorney General shall not be liable officially or individually in libel, slander, or in any other action in any way because of such opinion or its contents or in connection therewith.

The Attorney General shall without unreasonable delay refer the same to the Governor for his approval or disapproval. The Governor shall return it to the Secretary of State with his action endorsed thereon. If he approves it, the Secretary of State shall record it in the record kept in his ofifce for that purpose, and certify to the same under the great seal of this state, and transmit it to the applicants; if the Governor disapproves it, the Secretary of State shall file it in his office and notify the applicants of the disapproval and state the reasons therefor. If within thirty (30) days after the Secretary of State has mailed the said notice they have not amended it so as to meet the approval of the Governor, the Secretary of State shall return the fee to the applicants, less the sum of Three Dollars ($3.00), which shall be paid into the State Treasury for "charters examined, disallowed and filed."

The powers specified in the charter shall, by the approval of the charter, be

The Attorney General then submits his opinion to the Governor, who has the absolute power to approve or disapprove the charter. The statute includes no guides or standards to regulate this approval or disapproval. Thus it may be said that discretion thus granted by § 5310.1 is unlimited in scope.

I

■ Courts have repeatedly held that any statute which confers such absolute and arbitrary discretion on a state official to grant or deny a right or privilege is unconstitutional. The landmark case is Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The Supreme Court there considered a statute granting absolute discretion to a public officer to grant or deny licenses to operate laundry businesses in San Francisco.

The Court said:

"When we consider the nature and theory of our institutions of govern-

vested in the corporation and it shall thereupon go into operation; provided, however, before any such corporation shall construct, operate or maintain a water transmission or distribution system for the sale of water to the public it shall obtain a certificate of public convenience and necessity from the Public Service Commission, pursuant to the provisions of Chapter 372 of the General Laws of 1956 [§§ 7716–01 et seq.] of the State of Mississippi.

The powers specified in the charter shall, by the approval of the charter, be vested in the corporation and it shall thereupon go into operation.

All such charters, whether heretofore or hereafter granted, are and shall be designated as nonprofit nonshare corporations, and the terms of all such charters, whether heretofore or hereafter granted, shall be perpetual, provided, nevertheless, that same shall be subject at all times to alteration, amendment or repeal.

3. Each provision of this act is hereby declared to be severable and in the event any word, portion, or clause of this act be held to be unconstitutional, such shall not affect or invalidate the remaining portion thereof.

ment, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. * * * For, the very idea that one may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." Id. at 369–370, 6 S.Ct. at 1071.

The Mississippi Supreme Court has held that statutes vesting unlimited discretion in a state official are violative of both the Fourteenth Amendment and the Mississippi Constitution. In Broadhead v. Monaghan, 238 Miss. 239, 117 So.2d 881 (1960) the Court held that:

"In delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto."

A similar holding was made in State v. Allstate Ins. Co., 231 Miss. 869, 97 So.2d 372 (1957), concerning a licensing statute for insurance companies. See also Louisiana State Board of Embalmers v. Britton, 244 La. 756, 154 So.2d 389 (1963); Lee v. Renfro, 257 Ala. 679, 60 So.2d 849 (1952).

■ Unless there are specific standards for the granting or denying of a charter, all charters which comply with the statutes and Constitution of Mississippi and of the United States must be granted. In Hornsby v. Allen, 5 Cir., 1964, 326 F.2d 605, 612, it was held that in the absence of any standards for the issuance of liquor licenses, the courts must enjoin the denial of licenses to any applicants who comply with existing law.

Similar findings of the unconstitutionality of regulatory statutes for lack of specific standards have been made by state courts. In a recent decision concerning a New York statute much like § 5310.1, requiring judicial approval for charters for non-profit corporations, the New York Court of Appeals held that, in the absence of a clearly expressed legislative standard for approval, approval could only be denied if the charter failed to satisfy some specific requirement of New York law, Association for Preservation of Freedom of Choice, Inc. v. Shapiro, 9 N.Y.2d 376, 214 N.Y.S.2d 388, 174 N.E.2d 487 (1961).

That Court held that a judge could not deny a charter because he found it not to be "in accord with public policy" or to be "injurious to the community." Otherwise, the court said:

"[the] individual Justice would be at liberty to indulge in his own personal predilections as to the purpose of a proposed corporation, and impose his own personal views as to the social, political, and economic matters involved." Id. at 382, 214 N.Y.S.2d at 391, 174 N.E.2d at 489.

## II

Even if it is argued that § 5310.1 does not grant absolutely unlimited discretion to the Governor, but that it limits his disapproval to those charters which are not in the best interest of the State of Mississippi that standard is so vague as to be unconstitutional on its face.

Many courts have held that similarly vague standards do, in effect, grant unlimited discretion to a licensing officer, and that they are unconstitutional. In Staub v. City of Baxley, 355 U.S. 313, 322, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958) the Supreme Court considered a statute in which the standard was the "effects upon the general welfare of citizens of the City of Baxley." The Court held that:

"[t]hese criteria are without semblance of definitive standards or other controlling guides governing the action of the Mayor and Council in granting or withholding a permit."

## III

If it is necessary for a state to limit the number of charters granted, all the safeguards of due process must be observed before any applicant for this reason can be denied a charter. Hornsby v. Allen, supra; Glicker v. Michigan Liquor Control Commission, 6 Cir., 1947, 160 F.2d 96. In *Hornsby* the Court held that an applicant for a liquor license was entitled to a hearing at which she could present evidence and cross-examine witnesses, to have the administrative findings disclosed, and to be informed of the specific regulations and statutes governing her application. Id. at 608, 610, of 326 F.2d. In the absence of such procedural safeguards a denial of a license, particularly when other applicants are granted such licenses, violates an applicant's constitutional rights. Although it is clear that an applicant for a charter under § 5310.1 is entitled to the same procedural safeguards as would be an applicant for a liquor license, neither the statute nor any administrative regulation provides any constitutionally sufficient procedure for the denial of charters. The authorization in § 5310.1 for the Attorney General to make an investigation if he so desires does not guarantee that the requirement of due process as outlined in *Hornsby* will be met. Nor are there any administrative regulations setting forth a constitutionally adequate procedure which might cure the defect in the statute. Therefore, it is clear that any denial of a charter, otherwise lawful, to the plaintiffs under the statute as presently written violates the Due Process Clause of the Fourteenth Amendment.

## IV

Moreover, § 5310.1 unconstitutionally discriminates against non-profit corporations in comparison to profit corporations. Under §§ 5309–121 et seq. of the Mississippi Code the Secretary of State must issue a certificate of incorporation to any corporation for profit upon a finding that the articles of incorporation "conform to law." In contrast to this, § 5310.1 provides that the Governor has unlimited discretion to deny a charter to a non-profit corporation.

## V

Although legislative distinctions and classifications can always be made on any rational basis, an irrational distinction like that in §§ 5309–121 et seq., and § 5310.1, must be held to violate the Fourteenth Amendment. A classification must bear "a reasonable and just relation to the act in respect to which the classification is proposed," Frost v. Corporation Commission of State of Oklahoma, 278 U.S. 515, 522–523, 49 S. Ct. 235, 238, 73 L.Ed. 483 (1928). In the *Frost* case the Supreme Court held that a state could not constitutionally allow a corporation to operate a cotton gin without obtaining a certificate of necessity, when an individual was required to have one to operate a cotton gin.

Arbitrary classifications have also been held to violate the Fourteenth Amendment by the Supreme Court in many cases including McLaughlin v. State of Florida, 379 U.S. 184, 190–191, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), and Yick Wo v. Hopkins, supra. The Mississippi Supreme Court has made similar findings both with respect to the Fourteenth Amendment and also with respect to § 14 of the Mississippi Constitution. See e. g. Moore v. Grillis, 205 Miss. 865, 39 So.2d 505, 10 A.L.R.2d 1425 (1949); Ballard v. Mississippi Cotton Oil Co., 81 Miss. 507, 34 So. 533, 62 L.R.A. 407 (1903).

Since there is no rational basis for the distinction in Mississippi law between the requirement for profit and non-profit corporations in this respect, it is clear that the requirement of approval by the Governor under § 5310.1 is of doubtful validity.

## VI

After the present Governor came into office plaintiffs re-submitted a charter application in the spring of 1968. The Attorney General then certified that the re-application was not violative of the

Constitution or the laws of the State of Mississippi and sent it to the Governor's office. The Governor has taken no action thereon. Under the circumstances inaction is tantamount to a rejection of the application. It has been nearly three years since the original application was filed.

Oral and documentary evidence presented to the Court on the hearing of this cause amply indicates that the Governor has approved charters for non-profit corporations whose purpose was very similar to, if not exactly identical to that of the proposed Delta Opportunity Corporation of Mississippi, Inc.

 In the light of the foregoing considerations, it is amply clear, to the point of being beyond reasonable dispute, that this Court, confronted with the case in this posture, must hold, and it hereby holds, that when and if an application for a non-profit corporation is not violative of the Constitution and laws of the State of Mississippi then it is obligatory that such charter do issue in the manner and form and according to the procedure prescribed by the statute. Any effort to allow the rejection of a charter on the ground that its issuance would not be in the best interest of the State of Mississippi without, at the same time prescribing standards for the determination of such a fact, and without prescribing the procedure by which the parties may be heard and be given the benefit of an appeal to the courts, violates the Federal Constitution and cannot be permitted to stand. Allowing the unfettered authority to approve some charters and to reject others, at sole discretion, free of any standard or review is likewise unconstitutional and cannot be permitted to stand.

## VII

Section 5310.1, Mississippi Code 1942 contains the entire legislative provision in this state for the issuance of private charters. The infirmity in this statute so permeates the statutory scheme therefor as to immobilize the entire act, even though the act contains a savings clause. The Court would not be justified under the circumstances in ordering the issuance of a private charter under it. We hold that this statute (§ 5310.1) violates the Fourteenth Amendment to the Constitution of the United States in the respects indicated and is thus void.

There will be no assessment of costs. All other and further relief requested will be denied. Although the complaint assailed the validity of the act, it did not specifically ask that it be declared unconstitutional, but did seek general relief.[2]

A judgment, accordingly, may be presented to one of the judges for entry on behalf of the entire Court.

---

**2.** Civil Rule 54(c) provides: "Every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."