Dated this 8th day of April, 1970.

**UNITED STATES of America**

**v.**

**Clark P. POLAK d/b/a Trojan Book Service d/b/a Beaver Book Service.**

**Crim. No. 70–57.**

United States District Court, E. D. Pennsylvania.

April 30, 1970.

Thomas McBride, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Norman Oshtry, Robert J. Reinstein, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

On February 19, 1970, the Federal Grand Jury returned an indictment against Clark P. Polak, d/b/a Trojan Book Service and d/b/a Beaver Book Service, and charged the defendant with twenty-one violations of 18 U.S.C. § 1461 by knowingly using the mails to distribute "obscene, lewd, lascivious, indecent, filthy and vile matter, to wit: Commercial Advertising." A bench warrant for Polak's arrest was issued on February 19, 1970. On that same day, Kurt Similes, a United States Postal Inspector, by sworn affidavit and in person sought and was granted a search and seizure warrant in an *ex parte* proceeding before a Federal District Court Judge.[1] The warrant authorized the search of the premises of Suite 300 at 1230 Arch Street, Philadelphia, Pennsylvania, and the seizure of the following property:

"(1) commercial advertisements described in Exhibits A through FFF, as attached hereto and incorporated by reference herein, or other commercial advertisements with similar visual and verbal depictions;

(2) envelopes for commercial advertising;

(3) postage meters;

(4) addressograph plates;

(5) addressograph machine;

(6) mailing lists;

(7) material used in and for the art layout, design, photography, production and printing of commercial advertising;

(8) business records relating to the purchase, rental or exchange of mailing lists;

(9) business records relating to the purchase, production or printing of commercial advertising described in Exhibits A through FFF or other commercial advertisements with similar visual or verbal depictions, which are instrumentalities being used in the perpetration of a crime or crimes against the United States to wit; violations of 18 U.S. Code, § 1461."

The search, which involved at least eight postal inspectors, began at 2:30 P. M. on February 19, 1970, and lasted until about 8:00 that evening. The following items were seized incident to the execution of the warrant:

1. 8 file cabinets containing addressograph plates [2]

2. 1 model 3M photo-copier

3. 1 light table

4. 6 cartons of artist-layout material (consisting of cut-out photos; paint; brushes; pens; etc. used in the preparation of litho plates for the commercial advertising distributed by mail)

5. 1 Pitney-Bowes Meterhead # 868569

6. 1 Pitney-Bowes Meter Machine Base #11455): used for postage on commercial advertisements mailed by this firm

7. 2 electric addressograph machines

8. 2 boxes of completed address-o-plates

9. 1 box adress-o-plates (unused)

---

1. At this *ex parte* proceeding, the Judge had before him a four page affidavit, signed by Mr. Similes and submitted in support of the request for the search and seizure warrant. In addition, the Judge was shown the commercial advertisements which were the subject of the indictment. These advertisements comprise the Government's Exhibits A through FFF.

2. Postal Inspector Similes testified that "in excess of 50,000" addressograph plates were seized. See Notes of March 20, 1970 hearing, p. 6.

10. 2 cartons miscellaneous envelopes and addressoplates

11. 2 cartons empty returned mailing envelopes

12. 39½ boxes of pre-addressed envelopes (prepared by addressoplate process)

13. 68½ cartons of commercial advertising matter identical or similar to the type of commercial advertising described in the affidavit to the search warrant

14. 1,500 pieces of third class mail matter containing commercial advertisements prepared for mailing

15. 5 boxes of airmail business envelopes bearing Trojan Book Service and/or Beaver Book Service return address

16. 8 boxes containing addressed envelopes with commercial advertisements inserted

17. 49 cartons of large size unaddressed envelopes

18. 49 cartons of small size business reply envelopes bearing the address of Trojan and/or Beaver Book Service, some of them being bland envelopes

19. 1 manila envelope containing 35 MM negatives and 2¼ x 2¼ positive color transparencies of nude and semi-nude males in position similar to those depicted on the commercial advertisements described in the affidavit in support of this warrant

20. 1 manila envelope containing paid bills related to business transactions with printers, artists and envelope companies.

The defendant filed, on February 20, 1970, a "Motion and Petition for the Return of Seized Property and the Suppression of Evidence" alleging that the warrant was illegally procured and averring that the seizure was causing irreparable financial harm to his business.

On February 26, 1970, argument was had on the Motion for Return of Seized Property. It was the Government's position that they were entitled to retain all of the seized property since the search was legal and its fruits represented either contraband or instrumentalities of the crime. Since we had grave doubts as to the legality of the Government's procedures in obtaining the warrant, we decided that, pending the argument and decision on the motion to suppress, a rational accommodation should be sought which would allow the Government to retain those items which could be considered "contraband" and return to the defendant those items deemed "instrumentalities" after the Government had had a reasonable opportunity to preserve their evidential value. An Order to this effect was entered on February 27, 1970. (See Appendix).

On March 9, 1970, we granted the government's *ex parte* motion [3] for an extension of time until March 20, 1970, to comply with our Order of February 27, 1970. Then, on March 20, 1970, we held an adversary hearing on the defendant's motion to suppress.

Defendant's Motion to Suppress Evidence raises the following issues:

In a prosecution for using the mails to distribute allegedly obscene commercial advertisements:

(1) can the Government seize and retain those and similar advertisements pursuant to a warrant obtained through *ex parte* proceedings?

(2) can the Government, pursuant to a warrant obtained through *ex parte* proceedings, seize and retain the instrumentalities by which the defendant

---

3. The proceedings can be characterized as *"ex parte"* in the following sense: Before considering the motion, we ordered counsel for the Government to communicate with and invite defense counsel to the conference. We were advised by counsel for the Government that defense counsel had decided not to attend but desired that their "vigorous opposition to any extension" be expressed to the Court.

creates the commercial advertisements and prepares them for delivery through the mails?

We have decided that both of these questions must be answered in the negative.

## I. THE COMMERCIAL ADVERTISEMENTS

■ There is no dispute in this case that the First Amendment prevents the Government from searching for and seizing allegedly obscene materials until there has been an *adversary* hearing on the issue of obscenity. Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). Indeed, even where the materials are later judicially determined to be obscene, the failure to hold an adversary hearing on the issue of obscenity prior to the issuance of the warrant has been held to be enough to allow the granting of a motion to suppress. See *Marcus, supra.* Anything short of an adversary hearing is constitutionally defective because it fails to adequately safeguard against the possible suppression of nonobscene materials.

The Government argues that, since the materials seized in this case are commercial advertisements, a prior adversary hearing as to their obscenity was not necessary. The apparent theory is that since commercial advertisements are not the "communication of information or dissemination of ideas or opinion," the safeguards of the First Amendment are inapplicable to them. Reliance is placed upon Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942), which, although distinguishable on its facts, stands for the proposition that "purely commercial advertisements" are not entitled to the protection of the First Amendment.

■ The Government's argument must be rejected. The mere fact that a leaflet or pamphlet is designed to sell something does not mean that it cannot also be a vehicle for the dissemination of ideas and opinions. Indeed, as Valentine v. Chrestensen, *supra,* holds, to offset the protection of the First Amendment, the leaflet must be considered "purely" commercial advertisement. See New York Times v. Sullivan, 376 U.S. 254, 265–266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). It is our factual conclusion that the leaflets seized in this case go beyond pure commercial advertisement and reach an area which is at least colorably protected by the First Amendment. The leaflets, in addition to containing commercial messages, contain pictorial and verbal excerpts from the publications advertised for sale. These excerpts are a form of expression and are, thus, *prima facie* entitled to First Amendment protection.[4]

Further, we think that the Government's attempt to remove the matter in question from the protection of the First Amendment by the device of labeling it "advertising" simply begs the question. It is seizable, if at all, not because it is advertising but only because it may be obscene. It is clear that if the Government attempts to restrict the dissemination of anything on the grounds that it is "obscene" it must satisfy the requirements of the First Amendment.

■ Hence, we hold that the advertisements seized in this case are colorably entitled to the protection of the First Amendment and as such should have been the subject of an adversary hearing on the issue of their obscenity before the search and seizure warrant issued. Accordingly, defendant's motion to suppress the seized advertisements is granted.[5]

---

4. Indeed, the very wording of the indictment in this case that the "commercial advertisements" are obscene is in reality an admission by the Government that the advertisements are a form of expression.

5. We further note an additional ground for suppressing any seized advertisements which were not identical to those Exhibits attached to the "Affidavit for a Search Warrant" and marked "A through FFF." (See Notes of the March 20, 1970 Hearing, p. 5). The warrant here authorized

## II. THE INSTRUMENTALITIES OF THE CRIME

■■ The Government seeks to justify its seizure and retention of the defendant's postal meter machines, envelopes, addressoplates, etc., on the ground that these items are instrumentalities or evidence of the crime charged in the indictment. We believe, however, that since the Government could not seize the commercial advertisements here without a prior adversary hearing as to their obscenity then it could not seize the instrumentalities by which these advertisements are prepared and distributed. Further, even if the advertising in question were determined to be obscene after an adversary hearing, we do not believe that this should give the Government the right to seize and retain the instrumentalities of speech on the ground that they have been used in the production of speech which is obscene where, as here, there is evidence which shows that the defendant also dealt in publications which are colorably, if not unquestionably, not obscene.[6] We believe that the First Amendment requires such protection of an individual's right to disseminate, and the public's right to receive, constitutionally protected publications.[7]

If the Government's argument on this point is accepted, they would be permitted to seize and retain the printing presses of a large metropolitan newspaper if a single commercial advertisement printed in the newspaper were determined to be obscene. The next step would be to seize a television network on the ground, perhaps, that its instrumentalities were used in connection with the dissemination of an obscene film. The scope of the power asserted is almost limitless. To permit the Government by this device to seize the very instrumentalities of speech would effect a much more drastic suppression of the opportunities of expression than any of the prior restraints which have been heretofore considered and condemned by the United States Supreme Court.[8] The statutes which the Court considered in those cases by their own terms purported to restrain only limited categories of speech. The power sought here is the right to seize the instrumentalities so that they cannot be used to disseminate *any* speech at all. Even the most primitive view of the First Amendment's protection would not,

the seizure of "other commercial advertisements with similar visual and verbal depictions." In our view, this language delegated to the executing officers too broad a discretion, particularly in light of the absence of an adversary hearing as to obscenity. See *Marcus, supra,* 367 U.S. at pp. 731–733, 81 S.Ct. 1708.

6. For instance, we note the following publications which are advertised for sale in two of the "Trojan Book Service" advertisements attached to the search warrant as Exhibits "DDD" and "GG": "I Am Curious, Yellow" by Vilgot Sjoman; "Kinsey Reports"; "The Wolfenden Report"; "Saint Genet" by Jean-Paul Sartre; "Suddenly Last Summer" by Tennessee Williams; "Other Voices, Other Rooms" by Truman Capote; "Another Country" and "Giovanni's Room" by James Baldwin; and "Advise and Consent" by Allen Drury.

7. We do not find compelling the Government's argument that the seizure here can

be justified on the ground that it has, at most, only "inconvenienced" the defendant and has not put him out of business. Since we are dealing with a right so fundamental, the Government should not be allowed to threaten, much less actually impair, the dissemination of constitutionally protected matter. Thus, a finding of actual impairment to the defendant's ability to disseminate protected speech is not necessary for our result.

8. See Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), and their progeny, *e. g.*, Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Staub v. City of Baxley, 355 U.S. 313, 323, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Largent v. Texas, 318 U.S. 418, 422, 63 S.Ct. 667, 87 L.Ed. 873 (1943).

in our opinion, sanction so massive and permanent a prior restraint on speech *before* an adversary hearing had determined that the instrumentalities were used in connection with the production of obscene speech. Further, since the instrumentalities in this case were used in connection with the production of some clearly protected matter, we do not believe that they could properly be seized and retained even after a prior adversary hearing had determined that they were *also* used in the production of obscene speech.

Accordingly, we will grant the defendant's motion to suppress the seized instrumentalities.

ORDER

And now, this 30th day of April, 1970, it is hereby ordered that defendant's Motion to Suppress is granted;

It is further ordered that the United States Government shall return forthwith all items seized pursuant to the execution of the search warrant dated February 19, 1970;

It is further ordered that the effect of this Order be stayed until 5:00 P.M., Tuesday, May 5, 1970, to allow the Government, if it is so minded, to apply to the United States Court of Appeals for the Third Circuit for a stay in this Order. No further stays will be granted by this Court.

## APPENDIX

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 70–57 |
| vs. | : | |
| CLARK P. POLAK | : | ORDER |
| d/b/a TROJAN BOOK SERVICE | | |
| d/b/a BEAVER BOOK SERVICE | : | |

And now, this 27 day of February, 1970, the Court having considered the Motion and Petition for the Return of Seized Property in the above matter, it is hereby

Ordered that the following articles of personal property be returned to the defendant at his place of business, 1230 Arch Street, Suite 300, Philadelphia, Pa., no later than Monday, March 9, 1970:

8 file cabinets containing addressograph plates

2 boxes of completed address-o-plates

39½ boxes of pre-addressed envelopes (prepared by addressoplate process)

49 cartons of large size unaddressed envelopes

49 cartons of small size business reply envelopes bearing the address of Trojan and/or Beaver Book Service, some of them being bland envelopes

It is further ordered that the following articles of personal property be returned to the defendant, Clark P. Polak, at his said place of business as soon as reasonably possible:

1 model 3M photo-copier

1 light table

6 cartons of artist-layout material (paint; brushes; pens; etc. used in the preparation of litho plates for the commercial advertising distributed by mail)

1 Pitney-Bowes Meterhead #868569

1 Pitney-Bowes Meter Machine Base #11455 used for postage on commercial advertisements mailed by firm

2 electric addressograph machines

1 box address-o-plates (unused)

2 cartons miscellaneous envelopes and addressoplates

2 cartons empty returned mailing envelopes

5 boxes of airmail business envelopes bearing Trojan Book Service and/or Beaver Book Service return address

1 manila envelope containing paid bills related to business transactions with printers, artists and envelope companies

The following articles of personal property shall be retained by the United States Post Office unless notified to the contrary:

cut-out photos

68½ cartons of commercial advertising matter

1,500 pieces of third class mail matter containing commercial advertisements

8 boxes containing addressed envelopes with commercial advertisements inserted

1 manila envelope containing 35 MM negatives

/s/
Thomas A. Masterson
Thomas A. Masterson
JUDGE