**INDO–AMERICAN CULTURAL SOCIETY, INC., Plaintiff,**

**v.**

**TOWNSHIP OF EDISON, NEW JERSEY, et al., Defendants.**

**Civil Action No. 95–4690 (JCL).**

United States District Court, D. New Jersey.

July 10, 1996.

Stephen M. Latimer, Loughlin & Latimer, Hackensack, NJ, for Plaintiff.

Ray A. Hook, South Plainfield, NJ, for Defendants.

## OPINION

LIFLAND, District Judge.

This case concerns the ability of defendants, the Township of Edison, New Jersey, et als., to require the Indo–American Cultural Society, Inc. to comply with a local permitting ordinance for public entertainments. The Indo–American Cultural Society asserts that the ordinance, on its face and as applied, violates its right to free expression under the First Amendment of the United States Constitution and under Article I, Section 6 of the New Jersey Constitution. The Court enjoined enforcement of certain provisions of the public entertainment ordinance in September 1995. Plaintiff now moves for partial summary judgment.

For the reasons set forth below, the Court will grant partial summary judgment for plaintiff.

### Background

Plaintiff, Indo–American Cultural Society, Inc., is a non-profit corporation formed under the laws of the state of New Jersey. Its purpose is to promote Indian religious and cultural heritage in the United States and in the State of New Jersey. It sponsors the autumn Indian religious festival, known as Navratri, in Edison, New Jersey and has done so annually since 1990. The festival has attracted large crowds.

In 1992, the festival was first held outdoors, on the grounds of the Raritan Center Expo Hall. 65,000 people attended over the course of nine evenings. Plaintiff staffed the event with over one-hundred security guards, as well as parking attendants and other health and safety personnel. The Public Entertainment Ordinance, Township of Edison Ordinance No. 670–92 (the "Ordinance"), was enacted shortly thereafter.

In 1993, plaintiff was instructed that is was required to comply with the Ordinance in order to hold its Navratri event. In both

1993 and 1994, plaintiff made applications under the Ordinance, which were approved as submitted.

The record reflects that in both 1993 and 1994, the Edison police received noise complaints from two neighborhoods located approximately 8,500 feet from the Navratri site: Clara Barton and the Heights of Edison. The record reflects that in 1994, none of the complaints were communicated to plaintiff. In 1993, investigation demonstrated that the noise of the festival could not be heard over the noise generated by traffic on the New Jersey Turnpike, which divides the Raritan complex from the residential area from which the complaint was received.

This case was instituted in relation to plaintiff's application for Navratri '95. As in 1993 and 1994, in 1995 plaintiff complied with the requirements of the Public Entertainment Ordinance. The Ordinance establishes that any group sponsoring a public event at which (1) admission is charged, § 24A–2A, and (2) 1,000 or more people are expected to attend at one time, § 24A–1, must obtain a special permit from the Township Council. § 24A–2A. To obtain a permit, the applicant must submit a detailed application (including a sizable bond), § 24A–3A, as well as a $1,000 filing fee. § 24A–3B. The Ordinance provides that "[t]he fee may be waived by resolution of the "Council" for bona fide nonprofit service organizations." § 24A–3B. No further criteria for waiver of the fee are provided.

The Township Council is required to hold a public hearing on the application within 30 days of filing, and the applicant must provide at least ten days' notice of the hearing to all property owners within 200 feet of the site of the gathering. § 24A–3C. Section 24A–3C directs that "the Township Council may issue a permit upon such terms and conditions as it deems necessary and proper to ensure the public health, safety and welfare. If the Council rejects the application, it shall set forth in writing the reason for the rejection." No more detailed criteria for acceptance or rejection are stated, and no appeal procedure is established by the Ordinance.

A public hearing was held on plaintiff's application on July 12, 1995, roughly three months after plaintiff submitted it. In response to the application, the Township of Edison Municipal Council passed Resolution 412–0795 (the "Resolution"). The Resolution placed a number of restrictions on the conduct of the festival. In particular,

(1) Sections F and G restricted the days and hours of operation of the festival to Fridays and Saturdays between the hours of 8 P.M. and 2 A.M.;

(2) Sections B through E required reimbursement for sound level monitoring, fire inspection, police protection, and first aid provided by Township officials; Section D placed discretion to determine the number of police officers required in the Township Chief of Police; Section H waived the $1,000 application fee but required that the fee be placed in an escrow account until all personnel fees were paid to the Township; and

(3) Section A provided that noise levels in the areas surrounding the festival could not exceed ambient noise levels measured by both parties in those areas thirty days before the festival began. In turn, Section I established a stepwise enforcement procedure for ambient sound levels around the festival.

*See* Township of Edison Resolution 412–0795, Complaint Ex. B.

Plaintiff challenged the Ordinance and the Resolution in September 1995, shortly before the Navratri festival was scheduled to begin. At an expedited hearing held on September 20, 1995, the Court ruled that plaintiff had demonstrated a likelihood of success on its claim that, on its face, Section I of the Resolution created a final prior restraint on protected speech without judicial safeguards. The Court enjoined enforcement of Section I. In the absence of a showing of irreparable harm, the Court declined to enjoin enforcement of section F, which prevented the festival from operating on Sundays. However, the Court observed that plaintiff had demonstrated a likelihood of success on its claim that this limitation was not sufficiently narrowly tailored to serve a legitimate state interest. Finally, with the consent of the parties, the Court deferred consideration of

the reimbursement provisions of the Ordinance.

Plaintiff now moves for summary judgment on the majority of the claims in its Complaint. Counts I, II, V and VI allege that the Ordinance violates the Constitutions of the United States and New Jersey by imposing the prior restraint of a permit on protected speech without narrow, objective and definite standards or procedural safeguards. Counts VII and VIII challenge the Resolution on the basis that it places unreasonable time, place and manner restrictions on plaintiff's speech without procedural safeguards. In Counts IX and X, plaintiff alleges that the Ordinance imposes undue financial burdens on plaintiff's speech and expression.[1]

Plaintiff asks the Court for a declaration that both the Ordinance and the Resolution violate the First Amendment of the Constitution of the United States and Article I Section 6 of the New Jersey Constitution. Plaintiff also requests that the Court permanently enjoin enforcement of the Ordinance and Resolution. Finally, plaintiff seeks summary judgment as to defendants' counterclaim for malicious prosecution and violation of the New Jersey statute prohibiting frivolous litigation. N.J.S.A. § 2A:15–59.1. Defendants have not opposed the motion.

*Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure directs a district court to grant summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden of showing that no genuine issue of material fact exists rests initially with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91

L.Ed.2d 265 (1986). If the moving party shows that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party may establish that the case presents a genuine issue for trial by showing that there is sufficient evidence favoring the non-moving party to enable a reasonable fact finder to return a verdict in that party's favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11. In evaluating a motion for summary judgment, the court must view the facts, and the reasonable inferences therefrom, in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

Before considering plaintiff's claims in detail, the Court observes that the rights in question here are clearly protected by the First Amendment. At the injunction hearing held last fall, counsel for defendants emphasized that the Ordinance and Resolution were animated by the Township's concerns about excessive "noise." The "noise" at issue in this case is created by music, which is a central feature of plaintiff's religious festival. By the Township's own construction, this controversy implicates basic free speech concerns. *See Forsyth County, Georgia v. Nationalist Movement,* 505 U.S. 123, 112 S.Ct. 2395, 2402, 120 L.Ed.2d 101 (1992) (when interpreting a statute on a First Amendment challenge, courts should consider the relevant authority's construction and implementation thereof).

*Ordinance 670–92*

█ Plaintiff mounts a facial challenge to Edison Ordinance 670–92. First Amendment freedoms are among the most precious of the

---

1. Plaintiff has not moved for summary judgment on several Counts of its Complaint, namely: Counts III and IV, alleging that Ordinance 670–92 was adopted expressly to control plaintiff and therefore is not content neutral; Counts XI and XII, alleging that Ordinance 670–92 and Resolution 412–0795 evidence racial and ethnic discrimination against plaintiff in violation of 42 U.S.C. § 1981 and Article I, § 8 of the New Jersey Constitution; Count XIII, alleging financial loss resulting from actions of the Township Council; and plaintiff's claims for compensatory and punitive damages and for attorneys' fees and costs.

rights guaranteed to citizens of this country by the United States Constitution. They are jealously guarded by our courts, particularly in the face of state-imposed restrictions. *See First Nat'l. Bank of Boston v. Bellotti*, 435 U.S. 765, 786, 98 S.Ct. 1407, 1410, 55 L.Ed.2d 707 (1978) (a state imposed restriction of freedom of speech necessitates "exacting scrutiny"). Because freedom of expression is so highly valued, a party may challenge a law that threatens to inhibit speech without showing that the law, in practice, has affected the challenging party; this is a "facial" challenge. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129, 112 S.Ct. 2395, 2400–01, 120 L.Ed.2d 101 (1992). An exception to normal rules of standing, facial challenges are permitted because, when a statute creates an "overbroad" restriction on speech, "every application [of that law] creates an impermissible risk of suppression of ideas." *See id.* at 129–31, 112 S.Ct. at 2401.

■ Ordinance 670–92 fails to pass Constitutional muster on two fronts. First, the Ordinance vests unbridled discretion in the Township of Edison Municipal Council to place restrictions and limitations on speech, or to prevent speech altogether by denying a permit. The risk posed by the statute is real. In 1995, it resulted in the passage of Resolution 412–0795, which contained myriad constitutional violations, set forth in detail below. However, even in the absence of this concrete example of the evils threatened by the Ordinance, this Court could not allow it to stand.

■ Any law that places a prior restraint on speech, such as a permit requirement, must provide "narrow, objective and definite standards" to guide the implementing officials. *Shuttlesworth v. City of Birmingham, Alabama*, 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). The city ordinance at issue in *Shuttlesworth* required a permit for parades and other public demonstrations. The ordinance allowed an administrative body to deny a permit application if it determined that "the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused." *Id.* at 149–50, 89 S.Ct. at 938. The Court held that "[t]his ordinance as it was written, . . .

[falls] squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Id.* at 150–51, 89 S.Ct. at 938.

Township of Edison Ordinance 670–92 commits the same constitutional sin committed by the ordinance in *Shuttlesworth*. It permits the Township Council to allow speech "upon such terms and conditions as it deems necessary and proper to ensure the public health." Ordinance § 24A–3C. By failing to specify objective factors to govern the Council's implementation of this mandate, the Ordinance runs afoul of First Amendment principles. *See Forsyth County*, 505 U.S. at 123, 112 S.Ct. at 2395; *Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958) ("[A]n ordinance which . . . makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of that official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.").

■ The Ordinance also deviates from First Amendment requirements by threatening a prior restraint on speech without providing procedural safeguards. A municipality may not impose prior restraints on speech without assuming the burden of speedily presenting its case in a judicial forum, thereby allowing the party on which the restrictions are being placed an opportunity to protect its rights in an adversarial proceeding:

[A] system of prior restraint runs afoul of the First Amendment if it lacks certain safeguards: First, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured.

*Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975).

The Ordinance offers plaintiff no avenue of appeal from the Municipal Council's decision. Judicial review, to be obtained at all, must be instituted by the censored party. This is an abdication of the Township's constitutional obligations. If the censored party does not seek judicial intervention, the prior restraint imposed by the Ordinance is permanent. This provision thereby steps beyond the constitutional power of the Township to preserve the "status quo" for a brief period while seeking judicial review.

Because Ordinance 670–92 violates the First Amendment by investing the power to censor speech in the Municipal Council without the protection of narrow, objective and definite standards and by placing prior restraints on speech without judicial safeguards, this Court will permanently enjoin enforcement of the Ordinance. Because plaintiff is entitled to judgment as a matter of law, and because no material facts are in dispute, summary judgment will be granted for plaintiff as to Counts I, II, V and VI of its Complaint. *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552–54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

*Resolution 412–0795*

*Noise Level Penalties—Section I*

■ Section I of the Resolution created a "three strikes, you're out" penalty provision with respect to ambient noise levels emanating from the festival. If the Edison health inspector measured ambient noise levels exceeding acceptable levels on two occasions, which could be on two separate nights of the festival, he was empowered by Section I to shut off all music at the festival. On a third excessive reading, he could shut down the festival altogether. Section I does not provide for judicial review or any other sort of administrative appeal.

On September 20, 1995, the Court ruled that plaintiff had demonstrated a likelihood of success on its facial challenge to Section I. The Court observed that Section I appeared to violate the First Amendment by threatening a prior restraint on speech without procedural safeguards. *Conrad,* 420 U.S. at 560, 95 S.Ct. at 1247. Plaintiff now seeks summary declaratory judgment that Section I violates the Constitution. The record now before the Court is just as it was at the time the injunction issued. Therefore, the Court now finds that Section I, on its face, violates the First Amendment. Therefore, plaintiff is entitled to summary judgment as to Counts VII and VIII of its Complaint. *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552–54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Plaintiff also asks the Court permanently to enjoin enforcement of Section I. However, the Resolution applied only to operation of the festival in 1995. Therefore, the issue of the Resolution's enforcement is now moot.

*Fees—Sections B, C, D, E and H*

■ Resolution Sections B, C, D, E and H imposed financial obligations upon plaintiff relating to operation of the 1995 festival. Section B provided that an Edison Township Health Inspector be present during operation of the festival to monitor sound levels. Section C required that two Township fire inspectors be present during festival operation. Section D directed that the Edison Township Chief of Police determine a number of police officers to be hired by plaintiff to provide security at the festival. Section E provided that a municipal official designate an appropriate number of first aid squads to attend the festival. Sections B through E also required that plaintiff reimburse the Township for the required services. Finally, Section H waived the $1,000 application fee required by the Ordinance but required that the fee be held in escrow pending payment for the municipality's services.

Plaintiff was charged $2,605.83 for the noise monitoring services of the health inspector, although plaintiff's own staff was already engaged in noise level monitoring. Kothari Cert. at ¶ 5. Plaintiff paid approximately $18,000 for the services of ten to twelve off-duty police officers. *Id.* at ¶ 6. These police officers were in addition to sixty

to seventy private security guards hired by plaintiff. *Id.* at ¶ 7. Plaintiff also paid $3,000 for the services of the two fire inspectors. *Id.* at ¶ 8. Finally, plaintiff was charged $5,000 for the services of the first aid squad. *Id.* at ¶ 8. In past years, plaintiff had hired the first aid squad at half the cost: $2,500. *Id.* In total, in order to operate the festival, plaintiff was required to purchase services from the Township with a total cost of approximately $28,605.83.

The financial provisions of the Ordinance are constitutionally infirm. Defendants acknowledged at oral argument that plaintiff was required to pay for the services of the health inspector as a direct result of the complaints of persons residing near the festival. There is no dispute in the record now before the Court that plaintiff provided its own noise-monitoring personnel. It is beyond peradventure that "[s]peech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob." *Forsyth County*, 505 U.S. at 134–35, 112 S.Ct. at 2404. Particularly where, as here, there is a risk that the response of the neighboring residences to the festival may depend upon the content of the speech, the municipality may not tax that speech based on public response. *Id.*

In *Forsyth County*, the county adopted a licensing scheme for parades and other uses of public property that required users of the property to pay a fee reflecting the county's police and administrative costs related to the event. *Id.* at 131–33, 112 S.Ct. at 2402. The Supreme Court ruled that the ordinance could not be enforced. The Court found that the cost of policing the event was directly related to public response to the user's speech. Therefore, the fee assessed depended upon the content of the speech. *Id.* at 133–34, 112 S.Ct. at 2403. In the case at bar, the possibility exists that if the music generated by the festival was desirable to surrounding neighborhoods, noise complaints would not be received and the health inspector's presence would not be required. This in turn creates a risk that the requirement that the health inspector be present and compensated was not content neutral. When a law creates a risk that a tax on speech may be based upon the subjective, content-based response of listeners, it violates the First Amendment. *Id.*

The reimbursement provisions of Sections C, D, and E also violate the Constitution. The situation presented by these provisions is so similar to that presented in *Forsyth County* that the Supreme Court's words are equally applicable here:

> Based on the ... implementation and construction of the ordinance, it simply cannot be said that there are any "narrowly drawn, reasonable and definite standards," *Niemotko [v. State of Maryland]*, 340 U.S. [268] at 271, 71 S.Ct. [325 at 327, 95 L.Ed. 267 (1951) ], guiding the hand of the ... administrator. The decision how much to charge for police protection or administrative time—or even whether to charge at all—is left to the whim of the administrator. There are no articulated standards either in the ordinance or in the county's established practice. The administrator is not required to rely on any objective factors. He need not provide any explanation for his decision, and that decision is unreviewable. Nothing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application of fees. The First Amendment prohibits the vesting of such unbridled discretion in a government official.

*Id.* at 133, 112 S.Ct. at 2402–03.

The record shows, without dispute, that the relevant officials were not guided by any known, objective standards in determining how many police and fire inspectors were needed at the festival. No explanation for the Township's determinations was required, and none was given. Kothari Cert. at ¶ 5, 7, 8, 10. The fees assessed for the Township's services were not based on objective measures, and the sudden doubling of the fee for the first aid squad was not explained. *Id.* The application fee escrow arrangement, found in Section H of the Resolution, also resulted from the exercise of the Municipal Council's unguided discretion. The Resolution provided no recourse for plaintiff from the decisions of the relevant officials. For the reasons articulated by the Supreme

Court in *Forsyth County,* Sections C, D E and H of the Resolution are constitutionally unacceptable.

The record evidences no dispute material to the constitutionality of Resolution Sections B, C, D, E and H. Therefore, plaintiff is entitled to summary judgment on Counts IX and X of its complaint, alleging that these sections violate the United States Constitution. *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552–54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Plaintiff has asked the Court permanently to enjoin enforcement of these sections. However, it appears that all fees have already been paid to the Township. Resolution 412–0795, on its face, applies only to operation of the 1995 festival. Therefore, the Court finds that further enforcement of the Resolution is not imminently threatened, and the request for injunctive relief will be denied as moot.

*Defendants' Counterclaim*

■ Defendants have counterclaimed against plaintiff, alleging that plaintiff's complaint was filed in bad faith for the sole purposes of harassment, delay or malicious prosecution and that plaintiff knew or should have known that there was no basis in the law for relief. N.J.S.A. § 2A:15–59.1. The counterclaim was filed on October 20, 1995, one month after the Court ruled that plaintiff had demonstrated a likelihood of success on at least one of its claims and had enjoined defendants based on that finding. Given that disposition, it is defendants' counterclaim that is frivolous. The record, even viewed in the light most favorable to defendants, clearly establishes that no reasonable jury could find that plaintiff's complaint was frivolous. *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 323–25, 106 S.Ct. at 2552–54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, summary judgment will enter for plaintiff on defendants' counterclaim.