Filed 9/15/23  P. v. Alvarez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H050620 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 22CR04258) |
| v. | |
| BRYAN ISAAC ALVAREZ, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

Defendant Bryan Isaac Alvarez pleaded no contest to a single felony count of carrying a loaded concealed firearm for which he was not listed as the registered owner (Pen. Code, § 25400, subd. (c)(6)).[1]  The trial court suspended imposition of sentence and placed defendant on probation for two years with various terms and conditions, including serving 60 days in county jail.

Defendant asserts that his conviction violates his Second Amendment right to possess a firearm, citing the United States Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. ___ [142 S.Ct. 2111, 213 L.Ed.2d 387] (*Bruen*).  For reasons that we will explain, we will affirm the judgment.

---

[1] All further statutory references are to the Penal Code.

## II.  BACKGROUND

After the trial court overruled defendant's demurrer asserting that the statute under which he was charged violated the Second Amendment, defendant pleaded no contest to one felony count of carrying a loaded concealed firearm for which he was not listed as the registered owner.  The trial court previously dismissed one felony count of possession of a firearm by a minor (§ 29610) pursuant to the prosecution's motion.  Defendant waived his rights to a preliminary hearing and a presentencing report.  The factual basis for defendant's plea was announced as follows:  "On the date and time listed in the complaint in the county of Santa Cruz the defendant did carry a loaded firearm when he was not eligible to possess it."  Defendant obtained a certificate of probable cause to challenge the overruling of his demurrer, and this appeal followed.

## III.  DISCUSSION

Defendant asserts that his conviction violates the Second Amendment to the United States Constitution.  He argues that California's firearms licensing statutes are unconstitutional, citing the United States Supreme Court's decision in *Bruen*, *supra*.  He argues that the firearms licensing statutes cannot be saved by judicial revision, and that even if they could, his conviction still must be reversed because the licensing statutes in effect at the time of the charged offense were unconstitutional.

The Attorney General concedes that one portion of California's firearms licensing statutes, the "good cause" requirement, is unconstitutional under *Bruen*.  However, the Attorney General asserts that this requirement is no longer enforced by the state and is severable from the remaining requirements of the licensing statutes, which the Attorney General argues remain constitutional.  The Attorney General also asserts that defendant does not have standing to raise his constitutional challenge, because he has not established that he would otherwise have been issued a license under the remaining licensing requirements.  The Attorney General also contends that the firearms licensing statutes are enforceable even if they require judicial revision.

2

In reply to the Attorney General's standing argument, defendant states that his challenge to the firearms licensing statutes is a facial one, and thus he asserts that he has standing to raise this challenge.

### A. *Legal Principles and Standard of Review*

" 'The interpretation of a statute and the determination of its constitutionality are questions of law.  In such cases, appellate courts apply a de novo standard of review.'  [Citation.]" (*People v. Alexander* (2023) 91 Cal.App.5th 469, 474.)

"An 'as applied' challenge 'contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right.'  [Citation.]  'When a criminal defendant claims that a facially valid statute or ordinance has been applied in a constitutionally impermissible manner to the defendant, the court evaluates the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction.'  [Citation.]" (*In re D.L.* (2023) 93 Cal.App.5th 144, 157–158 (*D.L.*).)  Conversely, " '[a] facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual.'  [Citation.]  A facial challenge seeks to void the statute as a whole by showing that ' "no set of circumstances exists under which the Act would be valid," *i.e.*, that the law is unconstitutional in all its applications.'  [Citation.]  Put another way, 'a facial challenge must fail where the statute has a " 'plainly legitimate sweep.' " '  [Citation.]" (*Id.* at p. 157.)

### B. Bruen

In *Bruen*, the United States Supreme Court examined New York's firearm licensing requirements, which stated that a person who seeks to possess a firearm at home or in one's place of business "must convince a 'licensing officer'—usually a judge or law enforcement officer—that, among other things, he [or she] is of good moral character, has

no history of crime or mental illness, and that 'no good cause exists for the denial of the license.' [Citation.]" (*Bruen*, *supra*, 597 U.S. at p. ___ [142 S.Ct. at pp. 2122–2123].) To obtain an unrestricted license to carry a firearm outside the applicant's home or business, New York required the applicant to demonstrate that " 'proper cause exists' " for the license. (*Id.* at p. ___ [142 S.Ct. at p. 2123].) The court extended its earlier decisions to hold that the Second Amendment protects "an individual's right to carry a handgun for self-defense outside the home." (*Id.* at p. ___ [142 S.Ct. at p. 2122].) The court then held that the test for assessing the constitutionality of a firearms restriction under the Second Amendment is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " (*Id.* at p. ___ [142 S.Ct. at pp. 2129–2130].) The court observed that 43 states issue licenses based on objective criteria, but that New York was one of six states in which "the government further conditions issuance of a license to carry on a citizen's showing of some additional special need." (*Id.* at p. ___ [142 S.Ct. at p. 2122].) The court thus held that New York's licensing framework violates the Second Amendment by requiring an applicant to show "a special need for self-defense . . . ." (*Ibid.*)

The *Bruen* court, however, stated that an individual's right to carry firearms outside the home is still "subject to certain reasonable, well-defined restrictions." (*Bruen*, *supra*, 597 U.S. at p. ___ [142 S.Ct. at p. 2156].) The court recognized that the analysis to determine whether a restriction is consistent with the nation's historical tradition of firearm regulation under the Second Amendment is not a "regulatory straightjacket," and it repeated its assurance from an earlier decision that the Second Amendment does not protect a right to " 'keep and carry any weapon whatsoever in any

4

manner whatsoever and for whatever purpose.' " (*Id.* at pp. ___ [142 S.Ct. at pp. 2128, 2133].)  In his concurring opinion, Justice Kavanaugh (joined by Chief Justice Roberts) wrote "to underscore . . . the limits of the Court's decision." (*Id.* at p. ___ [142 S.Ct. at p. 2161] (conc. opn. of Kavanaugh, J.).)  Justice Kavanaugh observed that the court's decision "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." (*Ibid.*)

## C.  California's Firearms Licensing Statutes

California restricts the ability to carry firearms in public places.  (§§ 25850, subd. (a), 26350.)  Under the statute defendant was convicted of violating, carrying a concealed firearm in a vehicle or on the defendant's person is punishable if:  (1) the firearm is loaded, or if both the firearm and the unexpended ammunition are in the immediate possession of the person or readily accessible to that person; and (2) the person is not listed as the registered owner of the firearm.  (§ 25400, subds. (a) & (c)(6).)  However, a person may apply for a license to carry a concealed weapon.  (§§ 26150, subd. (a), 26155, subd. (a).)  Under the concealed carry license statutes, the sheriff or chief of police may issue a license to the applicant upon proof of all of the following:  (1) the applicant is of good moral character; (2) good cause exists for issuance of the license; (3) the applicant resides or works in the city or county; and (4) the applicant has completed a course of training.  (§§ 26150, subd. (a), 26155, subd. (a).)  However, the Attorney General asserts that the day after the *Bruen* decision, the Attorney General issued an alert recognizing that the good cause requirement was unconstitutional under *Bruen* and instructing local officials not to enforce the good cause requirement and to continue applying and enforcing all other requirements to obtain a license.  Defendant does not contest this assertion.

### D. Bruen*'s Impact on California's Licensing Statutes*

Post-*Bruen*, courts – including this one – have concluded that California's firearms licensing statutes do not violate individuals' Second Amendment rights. In *D.L.*, the Court of Appeal rejected a minor's contention that "section 25850 must be unconstitutional on its face as a result of its relationship to California's laws for obtaining a license to carry a concealed weapon."[2] (*D.L.*, *supra*, 93 Cal.App.5th at p. 147.) The *D.L.* court first concluded that the minor had standing to raise a facial challenge to section 25850. (*D.L.*, *supra*, at p. 148.) The Court of Appeal held that the good cause requirement of California's firearms licensing laws "is severable from the balance of California's concealed carry licensing framework," and it held that "[i]t remains constitutional to punish someone without a license for carrying a loaded gun in public." (*Ibid.*)

Additionally, this court rejected a facial challenge to section 25850 in *In re T.F.-G.* (Aug. 24, 2023, H050112) ___ Cal.App.5th ___ [2023 Cal.App.LEXIS 639] (*T.F.-G.*).) This court first rejected the Attorney General's contention that the minor lacked standing to challenge the constitutionality of section 25850 unless he could show that he would have been able to obtain a license but for the unconstitutional provision. (*T.F.-G.*, *supra*, at p. ___ [2023 Cal.App.LEXIS 639 at pp. 25–26].) This court noted that California's good cause requirement contains the same deficiency that the United States Supreme Court in *Bruen* found in New York's law. (*T.F.-G.*, *supra*, at p. ___ [2023 Cal.App.LEXIS 639 at pp. 26–27].) However, this court noted that the challenges in *Bruen* and other United States Supreme Court Second Amendment decisions were not facial challenges, while T.F.-G. challenged "neither the application of a licensing requirement to unconstitutionally infringe his right to bear arms nor the imposition of

---

[2] Section 25850 provides: "A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." (§ 25850, subd. (a).)

criminal penalties against him as a consequence of such requirement, but instead the state's authority to impose criminal penalties on *any* individual who carries a loaded handgun in public in violation of the state's licensing regime, regardless of whether the noncompliance stemmed from a constitutionally sound requirement." (*T.F.-G.*, *supra*, at p. ___ [2023 Cal.App.LEXIS 639 at p. 28].)  This court concluded:  "To hold that section 25850, the enforcement mechanism of the licensing regime, is facially unconstitutional, we would need to find that section 25850 has no significant application in constitutionally valid circumstances—i.e., that it is unconstitutional in at least the generality or great majority of cases.  [Citation.]  Although we can identify two theoretical pathways to such a conclusion, neither is available here, because the constitutional defect is severable from the broader licensing regime, and the state retains authority to regulate firearm possession via licensure." (*Id.* at p. ___ [2023 Cal.App.LEXIS 639 at pp. 31–32].)

### E. Analysis

We hold, consistent with the decisions in *D.L.* and *T.F.-G.*, that defendant's Second Amendment challenge to the state's firearms licensing statutes fails.  In light of defendant's concession that his challenge is a facial one rather than a challenge as applied to the facts of his case, we assume without deciding that defendant has standing to bring his constitutional challenge.  Assuming defendant has standing, his challenge fails for the reasons outlined in *D.L.* and *T.F.-G.*  In defendant's opening brief, he not only challenges the good cause requirement but also the "may issue" and "good moral character" language.  However, this language does not violate the Second Amendment because *Bruen* imposed no prohibition against such provisions, as the court in *D.L.* recognized. (*D.L.*, *supra*, 93 Cal.App.5th at p. 166.)  The state is permitted to keep in place a reasonable licensing framework.  The only provision in New York's licensing framework that the Supreme Court invalidated that has an analogue in California law is California's

7

good cause requirement. The day after the *Bruen* decision was issued, the Attorney General instructed local officials not to enforce the good cause requirement but to continue to apply the remaining licensing prerequisites. Defendant does not take issue with the Attorney General's assertion that this instruction has occurred and has been carried out, and defendant does not oppose the Attorney General's contention that the good cause provision is severable from the remaining portions of California's firearms licensing framework. Instead, defendant rests his argument on the notion that "fixing an unconstitutional provision does not go back in time and make the statute *as it was construed at the time of Mr. Alvarez's conduct* constitutional." Defendant relies on *Shuttlesworth v. Birmingham* (1969) 394 U.S. 147 (*Shuttlesworth*), and *Staub v. City of Baxley* (1958) 355 U.S. 313 (*Staub*) for this position.

Although California's firearms licensing framework contained a constitutionally invalid requirement at the time of defendant's offense, *Shuttlesworth* and *Staub* do not support the position that defendant's conviction must be overturned. In *Staub*, the defendant was convicted of violating a city ordinance that required a permit before organizing factory workers for union activity. (*Staub*, *supra*, 355 U.S. at pp. 314–316.) The state argued that the defendant lacked standing to challenge the constitutionality of the ordinance because she made no attempt to secure a permit under the ordinance. (*Id.* at p. 319.) The United States Supreme Court rejected the lack of standing argument, holding that "the failure to apply for a license under an ordinance which on its face violates the Constitution does not preclude review in this Court of a judgment of conviction under such an ordinance." (*Ibid.*) The court then found the ordinance unconstitutional and reversed the conviction, and the decision did not discuss any possibility of rewriting the ordinance to make it constitutionally permissible. (*Id.* at p. 325.)

In *Shuttlesworth*, the defendant was convicted for violating an ordinance which proscribed participating in any public demonstration without first obtaining a permit from

8

the city.  (*Shuttlesworth*, *supra*, 394 U.S. at p. 148.)  The court, citing *Staub*, held that the ordinance was "squarely" unconstitutional under longstanding First Amendment precedent, holding that a requirement to obtain a permit that officials could grant or withhold at their discretion was an unconstitutional prior restraint on freedom of speech.  (*Shuttlesworth*, *supra*, at pp. 150–151.)  The court also noted that "a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license."  (*Id.* at p. 151.)  The Alabama Supreme Court attempted to rewrite the ordinance to make it an "objective and even-handed regulation of traffic," a transformation the United States Supreme Court characterized as "a remarkable job of plastic surgery upon the face of the ordinance."  (*Id.* at pp. 153–155.)  The United States Supreme Court held that "[i]t would have taken extraordinary clairvoyance for anyone to perceive that this language meant what the Supreme Court of Alabama was destined to find that it meant more than four years later; and, with First Amendment rights hanging in the balance, we would hesitate long before assuming that either the members of the [city] or the petitioner possessed any such clairvoyance at the time of [the defendant's arrest]."  (*Id.* at p. 156.)  Thus, the court reversed the judgment in the defendant's case.  (*Id.* at p. 159.)

Shuttlesworth and *Staub* are distinguishable from the instant case.  *Staub* merely held that the failure to apply for a permit did not mean the defendant lacked standing.  Here, we have analyzed defendant's Second Amendment challenge assuming that he has standing.  In *Shuttlesworth*, the permitting ordinance was wholly invalid, and it could be saved only with extensive rewriting by the Alabama Supreme Court to make it neutral and thus constitutionally permissible.  The defendant in *Shuttlesworth* was permitted to ignore the ordinance because its existence constituted an improper prior restraint on protected First Amendment activity.  Likewise, in *Staub*, the constitutional problem was the existence of the permit requirement, not one isolated requirement for obtaining a license among several valid requirements.  In the instant case, even with the removal of

9

the good cause requirement, Californians are still required to obtain a license to carry a concealed firearm in public, and numerous valid requirements remain for a person to obtain such a license.  Post-*Bruen*, the state retains the ability to impose a requirement to obtain a license for concealed carry of a firearm in public.  Defendant was not free to ignore the state's still-constitutional licensing requirements and engage with impunity in carrying a concealed firearm in public without a license.  Thus, *Shuttlesworth* and *Staub* do not mean defendant's conviction must be reversed when the majority of the licensing requirements survive *Bruen* and the offending requirement is severable.

Post-*Bruen*, the state maintains constitutionally permissible concealed carry licensing requirements.  The only licensing requirement that *Bruen* held is constitutionally impermissible – the good cause requirement – is severable and is no longer being required.  Because defendant did not comply with the licensing requirements, defendant's conviction for carrying a concealed firearm without a license does not violate the Second Amendment.

## IV.  DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:



_____
GREENWOOD, P.J.



_____
WILSON, J.



*People v. Alvarez*
**H050620**